## JOHN HANCOCK MUT. LIFE INS. CO. OF BOSTON, MASS., v. DORMAN.

### No. 9144.

Circuit Court of Appeals, Ninth Circuit.

Nov. 28, 1939.

Rehearing Denied Jan. 4, 1940.

Meserve, Mumper & Hughes, of Los Angeles, Cal. (E. Avery Crary, of Los Angeles, Cal., of counsel), for appellant.

George H. Moore and Hugh B. Rotchford, both of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment adjudging appellant indebted to appellee beneficiary under a term contract of employee group insurance. The coverage was against death and disability. The deceased insured was a member of the board of directors of a company, all of whose employees, who applied for such protection and paid a required premium, were insured.

The contract is embodied in several documents. One, hereafter called the master policy, is issued to the employer. Another is a certificate, issued to the employee whose life and disability are covered. The employer procuring the master policy for

his employees had no coverage of any risk. The master policy provided for the insurance of employees of several different companies.

The particular company whose employees were insured was the Western Bakeries Corporation, Ltd., a corporation having an office in the City of Los Angeles, California, at which met its board of directors for the conduct of the business of the employer, including that pertinent to the contract of insurance. The insured was a member of the board of directors of the Bakeries Corporation and attended the meetings of the board in Los Angeles and there contributed his services as one experienced in the baking trade to the deliberations of the board of directors. He received no pay from the company for any services rendered to it.

■ It is contended that the certificate is not a part of the contract insuring the employee. There is no merit in this contention. The master policy provides for its issuance to the insured and states that the certificate shall contain "a statement as to the insurance protection to which he is entitled". Many provisions as to this "insurance protection" appear in the certificate and not in the master policy, among others, that the insurance of the employee "will cease upon failure on the part of the Employee to pay the required premium contribution to the Employer," and the principal amount of his insurance. [1]

■ In these respects the certificate differs from that in Boseman v. Insurance Co., 301 U.S. 196, 203, 57 S.Ct. 686, 690, 81 L.Ed. 1036, 110 A.L.R. 732, where the certificate was held merely evidence of the policy itself because it "did not affect any of the terms of the policy" and because "It served merely as evidence of the insurance of the employee. Petitioner's rights and respondent's liability would have been the same if the policy had not provided for issue of the certificate." In the case at bar not only would many of the insured's rights and insurer's liabilities not be the same if the certificate had not been issued, but, without the certificate, the amount of his insurance and his obligation to pay a premium to keep it effective would not have been a part of the written agreement which created the liability of the insurer. A certificate required to be issued by the master policy to determine the terms and conditions of the insurer's liability is a part of the policy.

■ By its terms the master policy provided that such certificates should be issued directly by appellant but, prior to the beginning of the term of the alleged insurance of the director, a change was made by agreement between the insurer and the employer whereby the certificates to be issued to those insured were to be issued by the employer, Western Bakeries Corporation, Ltd., a subsidiary of Interstate Bakeries Corporation. The amendment to the master policy is stated in the insurer's own language in answer to an interrogatory of the complaint. The insurer's statement of the amendment is:

"Ans. to Int. No. 4. The insurance provided under the master policy *is handled,* for the sake of economy and promptness, under what is known as a simplified accounting system, by virtue of which the Interstate Bakeries Corporation and its subsidiary or affiliated companies issue the certificates and from time to time make reports in gross to the Home Office of outstanding insurance and premiums collected thereon." (Emphasis supplied)

The "handling" of the insurance included the receipt of the employee's application, the determination of his insurability as an employee, and of the amount of the consideration to be paid by the insured employee.

The insured filed his application with the Bakeries Corporation on December 6, 1934, several years after the issuance of the master policy. The insured's application, addressed to appellant insurance company, was received by Bakeries Corporation in Los Angeles, California, and the latter, acting under the amended agreement of insurance, accepted it, determined the insured's "premium contribution", and

---

[1] The definition of total permanent disability in the master policy differs essentially from that printed in the insurance company's certificate to be delivered to the employee. Accident and sickness disability benefits are fixed by the certificate to be paid weekly by the company to the insured employee and not by the master policy. The certificate limits benefits to the period in which the employee is under the care of a physician. There is a provision limiting the benefits if disability results from pregnancy. Also, there is one limiting the benefits if the employee is over 60 years of age. Nothing of these last three provisions appears in the master policy.

there issued the certificate signed by the insurance company. It thereafter collected the premium payments of the insured up to the time of his death. Nothing was done in this connection by the insurer save through the Western Bakeries Corporation which, under the amended master policy, was handling the insurance. We find no error in the district court's finding that in this handling process the Western Bakeries Corporation was the agent of appellant.

■ Since all these handling acts occurred in California and, so far as the insured is concerned, he had no contract with the insurance company until his policy certificate was issued to him in California, and since no place of performance of acts by the insured or the payment of the insurance proceeds to his beneficiary is stated in the policy, the legal effect of insured's insurance contract is determined by the law of California. California Civil Code, sec. 1646.

■ The certificate part of the policy and the application made a part of the insurance contract, described the insured as an employee of the Bakeries Corporation. The policy contained an incontestability clause providing "This policy shall be incontestable one year from the date of issue, except for the non-payment of premiums." It is admitted that a year has passed since the date of issue of the certificate which, so far as the insured is concerned, is the date of issue of the policy.

The insurance company claims that it may contest the validity of the policy on the ground that the insured is not an employee of the Bakeries Corporation because, although a director rendering service which from the testimony we may infer was of a higher character to his corporation than any of its manual and other employees, he received no compensation therefor. It claims that a corporate director could not be insured under the then existing provisions of sections 629a and 629b of the Political Code of the State of California, now recodified as sections 10200 et seq. of the Insurance Code, St.Cal.1935, p. 640 et seq., authorizing group insurance of "employees", because an employee is defined in the Labor Code as follows:

Section "3351. 'Employee' defined. 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes:

"(a) Aliens and minors.

"(b) All elected and appointed paid public officers.

"(c) All officers and members of boards of directors of quasi-public or private corporations while rendering actual service for such corporations for pay." St.Cal.1937, p. 267.

It is elementary that one may occupy the position of servant to a master and bind the master both in contract and in tort though he receive no compensation. It is our opinion that the including provision of the section of the Labor Code does not limit the character of employee under the provisions of the Insurance Code and make invalid a policy insuring as an employee a director actually rendering valuable service to the corporation though without compensation.

■ The insurance company also contends that in asserting that the insurance policy is invalid as to the director it is merely invoking the doctrine of certain cases, of which Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, is typical, that the incontestability clause does not affect a contest based on the ground of failure of the policy to cover the *hazards* from which the loss occurred. That case merely holds that the policy terms did not cover the hazard of death of a non-fare-paying passenger in an aeroplane as a result of his traveling in it. In effect, the insurance company's contention here is that although it issued the policy to the person named in the insurance contract, that *person* (not the hazards insured against) is not "covered" by the contract because he lacks an attribute which the insurer was persuaded or agreed he possessed. The insured person here is not "covered" because he has described himself in the application portion of the policy as an employee, which he is not.

This contention fails to correctly interpret the distinction of the Conway case between a contest of the initial validity of the policy and the coverage of the hazards against which the policy holder is insured. Chief Judge Cardozo states it:

"* * * The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to *coverage, a definition of the hazards to be borne by the insurer.* It means only this, that within the limits of the coverage the policy shall stand, unaffected by any

defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. * * *" (Emphasis supplied).

Matter of Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 452, 169 N.E. 642.

Appellant's concept of the word "coverage" as applying to the qualities of the insured as well as the hazards and as constituting a ground of contest of liability despite the provisions of the incontestability clause, is not recognized in California. We so found the law in New York Life Ins. Co. v. Kaufman, 9 Cir., 78 F.2d 398, and Mutual Life Ins. Co. v. Markowitz, 9 Cir., 78 F.2d 396, and the California Appellate and Supreme Courts since so have held it. The latter court states the rule:

"* * * We will, however, refer to one case from our own state, decided by the Third District Court of Appeal, being the only case to our knowledge in this state in which an incontestable clause similar to that contained in the policy issued to respondent has been construed. The case referred to is Mutual Life Ins. Co. v. Margolis, 11 Cal.App.(2d) 382, 53 P. (2d) 1017. While the court in that case held that there was no ambiguity in such a clause, it further held that after the period of contestability had expired an incontestable clause precludes any defense that the provisions in the policy providing for disability benefits were procured by fraud, *and precludes a contest of the policy on any grounds which are not specifically excepted in the clause itself.*" (Emphasis supplied)

Coodley v. New York Life Ins. Co. et al., 9 Cal.2d 269, 70 P.2d 602, 604.

In all those cases the application part of the contract of insurance described the insured as a person having the attribute of absence of a number of described diseases. In each the insurance company in effect contended that he was not the kind of a person that he was described to be, i. e., a person of insurable health. In each the insurer offered to prove the insured was a different kind of person, i. e., so afflicted with one or another of the stated diseases that it was a wrong on the company to enforce it, and, in effect, a wrong on other mutually insured persons by adding to their premium cost the disability or other payments made because of the lack of health of the applicants. In all it was alleged that the application portions of the policy describing the insured's freedom from certain diseases were made to defraud the insurance company. In each case it was held that after the expiration of the contestable period the insurer could not contest the policy on the ground that it did not insure the kind of person the application fraudulently described. If in some other jurisdiction the word "coverage" in insurance parlance includes attributes or conditions of the insured as well as the hazards covered, in California the incontestability clause precludes a showing after its period has expired that the policy did not cover the insured because he lacks such an attribute or condition.

The insurance company also contends that the beneficiary appellee failed to sustain his burden of proof that at the time of the insured's death the insured was an employee of the Bakeries Corporation, the policy providing that: "The insurance of any Employee covered hereunder shall end when his employment with the Employer shall end * * *." Assuming, contrary to our holding, that the deceased director was not an employee, we agree that the incontestability clause does not apply to the required proof of the existence of employment at the time of the insured's death. However, in this case the insurance company, through its agent in the handling of the policy, which included both the determination of the employment character of the insured and the collection of the premium contribution required by the printed provisions of the certificate to keep the policy in existence, for over a year accepted the monthly payment of the insured's premium. Such an acceptance of the monthly premiums by the insurer, here "handling" the insurance through its agent, in our opinion constitutes an estoppel to assert that the status existing at the time of death, shown to be identical in fact with the status existing at the time of making of the policy, was not that of employee. This estoppel by acceptance of premiums by the insurance company's agent in our opinion applies as well to the contention that the insured was not an employee at the time of the issuance of the policy and would control our decision in that regard even though there were no incontestability clause in the policy.

Affirmed.