Lelia Grace **FISHER**

v.

The **UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK**, a body corporate.

No. 8462.

United States District Court
D. Maryland, Civil Division.
Nov. 2, 1956.

W. Giles Parker and Wylie L. Ritchey, Baltimore, Md., for plaintiff.

William B. Kempton, Barton, Wilmer, Bramble & Addison, and Robert E. Coughlan, Jr., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff's motion for judgment n. o. v. raises the question whether the incontestable clause in a group life insurance policy prevents the insurer from successfully defending a death claim on the ground that plaintiff's decedent, Herman H. Fisher, President of Herman H. Fisher, Inc., a contributing employer, was not an employee eligible to be insured under the terms of the policy.

A jury has found that Herman H. Fisher was not an eligible employee, as defined in the policy, because he was not actively employed by the corporation on the effective date of the group policy and did not return to active duty or regularly perform the duties of his occupation at any time between the effective date of the policy and the date of his death. The parties had previously agreed that the effect of the incontestable clause should be decided by the court without a jury.

### Facts.

On or about October 1, 1952, the defendant issued its group policy, No. G–3562–L, to the Trustees of the Oil Heat Institute of America, Distribution Division, Insurance Trust Fund, as the assured. Herman H. Fisher, Inc. was named in the policy as a contributing employer, and thereupon became entitled to insure its eligible employees in accordance with terms and schedules of the policy.

The policy was issued under sec. 204 (d) of the Insurance Law of New York, McKinney's Consolidated Laws of New York Annotated, c. 28, Book 27, Insurance Law, Article 9–A, sec. 204(d). It required no physical examination; but the defendant agreed to insure all eligible employees of the contributing employers. Under the heading "Employees Eligible" the policy provided:

"Definition: The term 'employee' as used in this policy shall mean all actively employed officers, executives, division and department heads including individual proprietors and partners actively employed in their occupation provided that such employee's annual earnings from the contributing employer or as proprietor or partner are not less than $5,000.00.

"Each employee as defined above actively at work with a contributing employer on the effective date of the policy shall be eligible for insurance hereunder on such effective date; each employee not eligible on the effective date of the policy shall

become eligible hereunder on the date he becomes actively employed with a contributing employer; * * "

Each employer submitted to the trustees a list of its eligible employees, giving the necessary information with respect to name, age, address, salary and beneficiary. The trustees forwarded this information to the defendant. As additional employees became eligible, the employer would submit their names and other relevant information to the trustees for transmission to the defendant.

The policy required that the employers should pay all premiums to the trustees, who remitted them to the defendant. No premiums were collected from the employees, and no individual applications were signed by the employees or submitted to the trustees or to the defendant.

The policy also contained the following provisions, among others:

"Effective Date of an Employee's Insurance

"Each employee becoming eligible as of the effective date of this policy shall become insured as of that date. Each employee becoming eligible after the effective date of this policy shall become insured as of the date of his eligibility; provided, however, that in any instance when an employee is not regularly performing the duties of his occupation on the date he would become insured in accordance with the terms of this paragraph, the effective date of such employees insurance shall be deferred until his return to active duty. * * * "

"Termination of Employee's Insurance

"The insurance of an employee shall automatically terminate at the earliest time indicated below except as may be hereinafter provided:

"(a) Thirty-one days after termination of employment. Cessation of active work in the classes of employees eligible for insurance shall be deemed termination of employment, except that while an employee is temporarily on part-time employment or is absent on account of sickness or injury, employment shall be deemed to continue until premium payments for such employee's insurance are discontinued. * * *

"(b) For non-payment of premiums by the Assured on behalf of an employee in which event such insurance shall automatically terminate at the end of the period for which premium has been paid.

"(c) Upon termination of this policy except as may be provided under 'Conversion Privilege' hereof."

"Certificates

"The Company will issue to the Assured, for delivery to each insured employee, a certificate setting forth a summary of the essential features of the insurance coverage to which the employee is entitled and to whom the benefits are payable."

"The Contract

"This policy, the application of the Assured attached hereto, and the individual applications, if any, of the employees, constitute the entire contract between the parties hereto.[1] All statements made by the Assured, or by the individuals insured, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the insurance, or be used in defense of a claim under it, unless it is contained in a written application.

"The rights of the Assured or of any insured employee or of any beneficiary under this policy shall not be affected by any provision other

---

1. No individual applications were ever taken from the employees or submitted to the trustees or the defendant.

than one contained in this policy or in the copy of the Assured's application attached hereto or in the individual application of an insured employee."

"Incontestability

"This policy shall be incontestable after one year from the date of issue except for non-payment of premiums."

Shortly after October 1, 1952, Herman H. Fisher, Inc. reported to the defendant through the trustees that Herman H. Fisher, its president, was an employee of Herman H. Fisher, Inc., eligible to be insured under the provisions of the group policy. Thereafter, the defendant issued to the trustees for delivery to Herman H. Fisher a certificate in which the defendant certified that "it has insured certain employees of Contributing Employers to the Trustees of the Oil-Heat Institute of America, Inc. Distribution Division, Insurance Trust Fund (Herein called the Assured) for Group Life Insurance under Group Life Policy Number G–3562–L, and that Herman H. Fisher, an employee, is insured for the sum of (see rider attached [2]) payable in event of death of such employee to Lelia Grace Fisher, Wife, beneficiary designated by the employee to receive such benefits as are payable in the event of the death of the employee. Effective Date 10–1–52. (Provided Employee is then regularly performing the duties of his occupation)." In accordance with the provisions of the policy and of sec. 161, subd. 1(a) of the New York Insurance Law, the certificate contained statements with regard to Payment of Insurance, Termination of Employee's Insurance, Conversion Privilege, Designation of Beneficiary, Misstatement of Age, and Extended Insurance—Premium Waiver, taken directly from the policy issued to the trustees. Herman H. Fisher, Inc. paid to the trustees the required premiums for the insurance on the life of Herman H. Fisher as well as its other em-

ployees, and the trustees transmitted those premiums to the defendant.

After the death of Herman H. Fisher, in March, 1955, the defendant discovered for the first time that Herman H. Fisher had not been actively employed by Herman H. Fisher, Inc. at the time the policy became effective on or about October 1, 1952, nor at any time thereafter, but that he had been paralyzed as the result of a cerebral embolism, and otherwise mentally and physically ill, and had been receiving total disability benefits during the entire period. The defendant refunded to the Trustees all premiums theretofore paid to it on account of the said Herman H. Fisher, and denied liability to the plaintiff as his designated beneficiary.

At the trial of her case against the insurer I reserved ruling on plaintiff's motion for directed verdict, based on the incontestable clause, and submitted to the jury the question whether Herman H. Fisher was ever an eligible employee under the terms of the policy. The jury found in favor of the defendant on that issue.

Plaintiff's motion for judgment n. o. v. raises the question whether the incontestable clause in the group policy bars a defense on that ground.

Discussion.

Plaintiff contends that the case is essentially the same as one involving an individual life insurance policy; that the question involved is the validity of the certificate issued to Herman H. Fisher; and that the incontestable clause in the group policy prevents the insurer from questioning the validity of that certificate after one year from the date of its issuance.

Defendant contends, on the other hand, that the incontestable clause in the group policy deals with the validity of the group policy itself, which is not questioned; that the issue here is one of coverage; and that the policy limits its coverage to active employees, and ex-

---

2. The amount was $10,000, to be automatically reduced to $5,000 at age 65.

cludes from its coverage any employee who was not an active employee at the time the policy was issued or at some time thereafter before his death.

■ The undisputed evidence shows that the group policy was applied for, issued and delivered in New York, and that the trustees paid the first premium in that State. The law of New York, therefore, controls the case. Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036.

The general principles applicable to individual life insurance policies have been clearly stated both by the Court of Appeals of New York and by the Fourth Circuit. In Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, Chief Judge Cardozo said: "The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. * * * with such a clause the death of the insured, coupled with the payment of the premiums, will sustain a recovery in the face of a forfeiting condition. It is quite another thing to say that the same facts will prevail against a refusal to assume the risk." 252 N.Y. at pages 452–453, 169 N.E. at page 642.

In Equitable Life Assurance Society of United States v. Deem, 91 F.2d 569, 572, Judge Chesnut, writing for the Fourth Circuit, discussed the history of the incontestable clause in life policies. He quoted from the opinion of Judge Cardozo in the Conway case, and said: "It is now generally held that, subject to the limits of coverage and clearly excluded risks, and with particular exceptions not here material, such as necessity of proof of claim and possible defense based on public policy, the clause bars all contests not excepted by its terms." The application, which was made a part of the policy in the Deem case, contained a provision that the policy should not take effect " 'until the first premium has been paid during my good health' ". The court held that a defense based upon that provision was barred by the incontestable clause, so far as the life insurance features of the policy were concerned.

It appears, therefore, that if the claim were on an ordinary life policy, and the defense were based on some representation in the application or some condition in the policy working a forfeiture, the question would involve the validity of the policy, and the incontestable clause would bar the defense.

■ In the case at bar, however, the claim is on a group policy, the validity of which the defendant does not question. The incontestable clause refers to "this policy", i.e. the group policy, and not to the individual certificates. This is in accordance with sec. 161 of the New York Insurance Law, which requires a clause providing that "the policy shall be incontestable after two years from its date of issue, except for nonpayment of premiums by the policyholder and except for violation by the person insured of the conditions of the policy relating to military or naval service." [3]

---

3. McKinney's Consolidated Laws of New York Annotated, c. 28, Book 27, Insurance Law, art. 7, sec. 161, contains, among others, the following provisions:
"*Group life insurance policies and certificates; standard provisions.*
"1. No policy of group life insurance shall be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which in the opinion of the superintendent are more favorable to certificate holders, if any, or not less favorable to certificate holders and more favorable to policyholders:
"(a) A provision that the policy shall be incontestable after two years from its date of issue, except for non-payment of premiums by the policyholder and except for violation by the person insured of the conditions of the policy relating to military or naval service.

The conclusion that sec. 161, subd. 1 (a) deals with the right of the insurer to contest the policy itself, and does not deal with the individual certificates, is confirmed by the provisions of the "Model Bill", adopted by more than a dozen states, but not by New York. The Model Bill requires a separate incontestable clause establishing a maximum period of two years for contesting the validity of insurance on an individual employee's life. Gregg, An Analysis of Group Life Insurance, U. of Pa. Press, p. 63.

The reference in sec. 161, subd. 1(a) to "conditions of the policy relating to military or naval service" is evidently intended to permit a condition in the master policy providing that all rights of an individual employee may be forfeited if he violates the condition referred to, as distinguished from a provision eliminating from coverage military and naval risks. Gregg, op. cit., p. 72.

Sec. 161, subd. 1(a) does not mean that the insurer cannot contest a claim if it can show that the risk was not one which it had assumed or that the employee was not included in the coverage of the policy. Metropolitan Life Ins. Co. v. Conway, supra. For example, sec. 161 permits a provision in the policy that thirty-one days after the termination of the employment of an insured employee his insurance under the policy shall automatically terminate, unless he takes advantage of the conversion privileges provided therein. Such a provision is a valid limitation of coverage, and not a forfeiture condition, prohibited by sec. 161, subd. 1(a) and by the incontestable clause in our policy. See John Hancock Mutual Life Ins. Co. of Boston, Mass. v. Dorman, 9 Cir., 108 F.2d 220, 224, discussed below.

"(b) A provision that the rights of the policyholder or of any insured or beneficiary thereunder shall not be affected by any provision other than one contained in the policy or the riders or endorsements thereon or in the amend-

The defendant contends that the requirement that the employee meet the test of eligibility, set out in the policy, is also a limitation of coverage. This position is supported by Rasmussen v. Equitable Life Assurance Society of United States, 293 Mich. 482, 292 N.W. 377, 379. In that case the defendant had issued its group life policy covering certain employees of the Parke-Davis Company. The policy excluded from coverage employees who had reached or passed their fortieth birthday. The jury found that the decedent had passed his fortieth birthday at the time he made application for coverage under the group policy. The plaintiff contended that the incontestable clause in the group policy was an absolute bar to the defense interposed by the defendant. The Michigan court, however, concluded that the defense was not a defense of invalidity, but was a defense of non-coverage, and was not barred by the incontestable clause. After quoting from the opinion of Judge Cardozo in the Conway case, the Michigan court said:

"The fact that the truth remains unrevealed for the period that would bar other defenses does not bring under coverage a risk expressly excluded by the policy. Nor can the certificate of itself be the source of any contractual rights, for it is not a part of the contract. Enright v. [Standard Life & Acc.] Insurance Co., 91 Mich. 238, 51 N.W. 928; Germain v. Aetna Life Ins. Co., supra [285 Mich. 318, 280 N.W. 773]; Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732. The risk undertaken was that of a group which conformed to the specifications of the contract. Employees who had passed the fortieth mile-

ments thereto signed by the policyholder and the insurer, or in the copy of the policyholder's application attached to the policy or in the individual applications, if any, submitted in connection therewith. * * *"

stone were beyond the 'limits of the coverage.' The understatement of age where the ambit of the group policy is expressly limited to a given age class does not come within the protection of the incontestability provision, any more than the misstatement that one is an employee when in truth he is a stranger to the group to be covered. * * This is not a case where the company is contesting its contract. It is insisting that the contract is complete and incontestable, and that by its very terms plaintiff's decedent, because of his age, was not entitled to its benefits. * * *"

See also Aetna Life Insurance Co. v. Hooper, 1935, 19 Ohio Law Abst. 123 (2d set) where the Ohio Appellate Court for the Ninth District (Summit County) said: "The evidence disclosed by the record herein fails to show that the plaintiff was at any time one of those persons within the class entitled to the benefit of the contract between the employer and the defendant; and until such showing, he had no enforceable rights under the policy in question, and the policy provision with reference to its being incontestable did not come into operation."

In John Hancock Mutual Life Assurance Co. v. Dorman, supra, upon which plaintiff principally relies, the basic question was whether a corporation director who was paid no salary was an employee within the meaning of a group policy and entitled to apply for protection thereunder. The certificates issued under the policy in that case, unlike the certificates in Boseman v. Connecticut General Life Ins. Co. and in the case at bar, contained contractual provisions and undertakings by the insurer which did not appear in the master policy; and the certificates were issued pursuant to written applications made by the employees to the employer, who, under the facts in that case, was held to be the agent of the insurer. The Ninth Circuit held that the director was an employee within the meaning of the policy, but discussed other questions. It stated that the incon-

testable clause prevented the insurer from setting up as a defense a misrepresentation in the application for the insurance made by the director, and said that the insurer's "concept of the word 'coverage' as applying to the qualities of the insured as well as the hazards and as constituting a ground of contest of liability despite the provisions of the incontestability clause, is not recognized in California", 108 F.2d at page 224. Nevertheless, the court continued, "Assuming, contrary to our holding, that the deceased director was not an employee, we agree that the incontestability clause does not apply to the required proof of the existence of employment at the time of the insured's death." 108 F.2d at page 224. The court found, however, that the insurer "through its agent in the handling of the policy, which included both the determination of the employment character of the insured and the collection of the premium contribution required by the printed provisions of the certificate to keep the policy in existence, for over a year accepted the monthly payment of the insured's premium", and that such acceptance of premiums from the individual insured by the insurer's agent constituted "an estoppel to assert that the status existing at the time of death, shown to be identical in fact with the status existing at the time of making of the policy, was not that of employee." 108 F.2d at page 224.

The facts in the instant case are quite different. The employee himself did not pay any premiums; the employer was not the agent of the insurer to receive the premiums, Boseman v. Connecticut General Life Ins. Co., supra; the employer paid the premiums to the trustees, who received them without any knowledge of the fact that Herman H. Fisher was not eligible. There is, therefore, no basis for an estoppel in the instant case. The certificates in the instant case, like the certificates in the Boseman case, are merely evidence of the policy and of the insurance of the employee, and are not, like the certificates in the Dorman case, essential elements of the policy, is-

sued pursuant to individual applications. There is, therefore, no justification in the instant case for applying the incontestable clause to the issuance of the individual certificates.

I conclude that under the facts of this case, the policy, and the New York law, the incontestable clause in the policy did not prevent the insurer from defending on the ground that the policy limits its coverage to eligible employees, as defined therein; and since the jury has found that Herman H. Fisher was never, after the issuance of the policy, an eligible employee, judgment should be entered in favor of the defendant.

It is so ordered.