Even if Rectangle did not have a good title when it conveyed to Rose (plaintiffs' author) in 1923 by the so-called quitclaim deed, which unquestionably was supported by a valid and sufficient consideration, the title later acquired by it in 1927 from Mr. and Mrs. Kranebell (under which defendants claim) inured, in my opinion, to the benefit of Rose, and, hence, to plaintiffs under the doctrine of after-acquired title.

Therefore, I respectfully dissent.

35 So.2d 237

NEIDER v. CONTINENTAL ASSUR. CO.

No. 38401.

March 22, 1948.

Rehearing Denied April 26, 1948.

622

Herman L. Midlo, of New Orleans, for appellant.

Lemle, Moreno & Lemle and George B. Matthews, all of New Orleans, for defendant and appellee.

HAWTHORNE, Justice.

In this suit the beneficiary named in a certificate of insurance issued under a group policy of life insurance seeks to collect from the insurer the amount of insurance specified in the certificate. The insurance company resists payment on the ground that the life insurance policy, as per certificate issued, had expired for nonpayment of premiums prior to the death of the insured.

The plaintiff, Mrs. William L. Henderson, alleged in her petition that the defendant, Continental Assurance Company, was indebted to her in the full sum of $3000 by reason of her being the designated beneficiary in a life insurance policy issued by the defendant on the life of her husband, William L. Henderson, on November 1, 1941, as per certificate No. 37474, attached to the petition and made a part thereof; that the premiums on the

policy were fully paid, and, therefore, the policy was in full force and effect at the time of her husband's death on June 10, 1944. She prayed for judgment in her favor, and against the defendant, in the full sum of $3000, together with 6 per cent interest from June 10, 1944, and for all costs.

In its answer the defendant admitted that it had issued a life insurance policy on the life of the plaintiff's late husband on November 1, 1941, as per certificate No. 37474, but denied any liability whatever under the policy, averring that the policy was canceled on February, 29, 1944, for non-payment of subsequent premiums due under the policy, and that, accordingly, the policy was not in effect on June 10, 1944, the date of the death of plaintiff's husband.

After trial on the merits, the district court rendered judgment in favor of the defendant, dismissing plaintiff's suit. From this judgment she has appealed to this court.

The record shows that the defendant insurance company issued to the Illinois Central System, comprising the Illinois Central Railroad Company, the Yazoo and Mississippi Valley Railroad Company, and the Gulf and Ship Island Railroad Company, a group policy of life insurance insuring the lives of the railroads' employees, to which we shall hereafter refer as the "master policy." This policy was executed on October 11, 1941, and became effective on November 1, 1941. Under this policy the husband of the plaintiff herein, William L. Henderson, who was employed by the railroad as an engineer, was issued a certificate of insurance by the defendant insurance company dated November 1, 1941.

The master policy provided that the premiums of insurance were payable monthly in advance, and it provided also for a 31-day grace period. According to the policy the premiums were to be paid by the employer, but it contemplated that the employer could require of the employees contributions to the payment of those premiums, for it provided that the insurance would cease at the due date of the premium to which the employee had failed to make a required contribution, and, as a matter of fact, the employer made regular deductions from the employees' salaries as contributions to the payment of the monthly premiums.

According to the testimony of the employee of the railroad company who had charge of the office in New Orleans that handled all matters concerning the insurance of the plaintiff's husband, as long as an employee had payroll earnings, the contributions on his insurance premiums were deducted from those earnings, under the policy of the railroad concerning those contributions, but, in the event he had no earnings, he had to pay his monthly premium contribution at the city ticket office. This employee also testified that

the deductions for the premiums were taken out of the current month's pay, that is, payments for January premiums would be taken out of the January payroll, etc. Under the company's system of payment to its employees it did not pay the employee until two weeks after the close of a payroll period, that is, for work performed January 1 through 15, the employee would be paid on January 31, and, for work performed January 16 through 31, he would be paid February 15.

It was the requirement of the employer that the employee make cash contributions for payment of the premiums when he had no payroll earnings that brought about the issue in this suit.

The employee, Mr. Henderson, became ill on February 19, 1944, and worked no more from that time until his death on June 10, 1944, which resulted from that illness. The defendant takes the position that Mr. Henderson's insurance lapsed on February 29, 1944, for non-payment of premiums. As pointed out before, the policy contained the provision that the insurance should cease at the due date of the premium to which the employee had failed to make a required contribution. Defendant contends that, since Mr. Henderson stopped work in February, the last deduction made by the company was for the *February* premium, and, since Mr. Henderson was not on the payroll for *March,* he was required to pay the premium contribution for *March;* that he did not make any payment during the 31-day grace period in March, and therefore the policy lapsed on the last day of the period for which a premium had been paid, February 29.

The record does not show what on date the employer paid to the defendant the premiums for February, 1944, nor does it show the payroll out of which the deduction was made for Mr. Henderson's February premium contribution. The policy of the company in regard to these payments and deductions is not even shown so that we might make a deduction as to how Mr. Henderson's February premium payment was handled between the employer and the defendant. We do not know whether the company made the payments in advance in accordance with the policy, and deducted the contribution at a later date from the employee's salary, if he had any salary, or whether it paid the premiums at some time during the grace period for those employees who had enough earnings to cover the contribution.

The fact that Mr. Henderson knew that some contribution was required of him to keep his insurance in force during his illness is shown by the plaintiff's testimony and by the testimony of the chief clerk of the mechanical department of the Illinois Central Railroad in New Orleans. The chief clerk testified that Mr. Henderson came into his office on or about March 15, 1944, and made inquiries concerning his insurance of a clerk in the office who died prior to the trial of this case; that he

overheard the conversation between this clerk and Mr. Henderson, and that Mr. Henderson was informed by the clerk that he would have to pay his group insurance "as long as he was not on the payroll".

On April 6, 1944, Mr. Henderson sent the plaintiff to the office to pay his insurance premium contribution. According to her testimony, he told her to make the payments for two months so that she would not have to go so often to the office. Receipts were given to Mrs. Henderson for the months of March and April, but on April 13, 1944, the railroad refunded to the insured by check these premium payments with the comment that his policy had been "reported for cancellation as of February 29, on account of failure to pay the amount applicable to group insurance premium contribution for March within the grace period".

What impresses us and what must have confused Mr. Henderson is the fact that he *received* pay in *March,* but no deduction was made for his *March* premium from that pay. According to the testimony of the chief clerk, Mr. Henderson was paid on February 29 his earnings for the period February 1 through February 15, and he was paid on *March 15* his earnings for the days February 16, 17, and 18, just preceding the time he became ill. From the explanation given him by the company's employees that he would have to pay his group insurance *as long as he was not on the payroll,* it was reasonable for him to believe that, if he received pay in March, he was still on the payroll, and that his premium contribution for March was deducted by the company. His misunderstanding of the time he was required to make the contribution is clearly shown by his actions thereafter. Since he sent his wife in *April* to pay his premium contribution, he must have thought that it was the April contribution that he was required to make directly, and thus that April was the proper time to make the payment.

Mr. Henderson was over 65 years of age at the time of his death, and had been in the employ of the railroad for over 40 years. Since the defendant admits that Mr. Henderson's insurance was in effect until February 29, 1944, he must have paid premium contributions from 1941, the effective date of its policy, through February, 1944. Being an elderly man and suffering from an illness that was serious enough to prevent his working, Mr. Henderson would undisputably have had every interest in keeping his life insurance in effect. A deduction under these circumstances that Mr. Henderson would have sent his wife in *April* to pay a premium contribution that he understood he had to pay in *March* to keep his insurance in effect would be absurd and ridiculous.

▉ Under the complicated situation shown by this case, where the premiums were payable *monthly in advance,* monthly premium contributions were deducted cur-

rently, and yet the company had a system of accounting whereby it was always two weeks behind in its payment of wages, it is not difficult to understand how an employee could be confused as to when he would be required to make the contributions if he were not working. In such a situation it is equitable and fair that the company should give to the employee specific information as to when his contribution is required. In this case the employer should have made it clear to Mr. Henderson on March 15 when he made his inquiries that, if he did not work in March, he would have to make the contribution for March, and that the contribution would have to be made on or before March 31. In any case the company should give to its employees reasonable notification at a reasonable time of its policy in making the deductions so that it will be clear to them when they will be required to make the contribution.

In our opinion any other conclusion would cause an injustice out of proportion to the inconvenience and expense the giving of such information by the company would entail. Group insurance is a comparatively new form of insurance, and each problem presented to this court concerning it should be approached with the purpose of giving to it every legitimate opportunity of becoming a social agency of real consequence. It has been pointed out that the purpose of this form of insurance is to provide the employer with a means of procuring insurance protection for his employees and their families at the lowest possible cost, and that the employer's making this form of insurance available to his employees results in the creation of good will between the employer and the employee, enables the employees to carry a larger amount of insurance than they could otherwise, and helps to attract and hold a permanent class of employees. Crawford, Group Ins., Sec. 2, pp. 5, 6. These results could be defeated if the employer, by poor administration of the insurance, could be instrumental in causing the insurance to become unavailable to the employee.

We feel that the employer owes to the employee the duty of good faith and due care in attending to the policy, and that the employer should make clear to the employe anything required of him to keep the policy in effect, and the time that the obligations are due. In its position as administrator of the policy, we feel also that the employer should be considered as the agent of the insurer, and any omission of duty to the employee in its administration should be attributable to the insurer. For these reasons we are of the opinion that the employer in this case did not discharge properly its duty to the employee to inform him of the time that direct contributions would be required of him; that this omission of duty was the reason that the premium payment for March was made after the expiration of the grace period, and that this

omission of duty was attributable to the insurer; therefore, the plaintiff is entitled to recover from the insurer the amount of the policy.

In the instant case, plaintiff prayed for interest at the rate of 6 per cent per annum on the full amount of the insurance policy from the date of the insured's death, and in her petition she alleged that she attempted on many occasions to obtain from the insurer the necessary forms to file a claim for the insurance, that is, to make full proof of death, etc., but that the insurance company refused to furnish them. The defendant admitted this allegation, defending its refusal on the ground that the policy was not in force and effect at the time of the death of the insured.

Under the facts and circumstances of this case, we cannot say that the insurer failed to pay this death claim "without just cause", and for this reason plaintiff is not entitled to 6 per cent per annum interest allowed under the provisions of Louisiana Act 17 of 1920.

The master policy provided that the insurance company would pay any amount due as a death claim upon receipt at its home office of due proof of the death of any insured employee. Since the defendant contended that the policy was not in force and refused to furnish forms for the making of proof of death, it would have been a vain, futile, and useless thing for plaintiff to have made such proof. Under these circumstances we think that plaintiff is entitled to 5 per cent per annum interest from the date she requested forms from the company to make such proof. However, the record does not establish this date, and, so that plaintiff may establish and fix the date with certainty, if she can, we have concluded to remand the case to the lower court solely for this purpose, and, upon her failure to prove said date, 5 per cent interest will be allowed from the date of judicial demand.

For the reasons assigned, the judgment appealed from is reversed, and it is ordered that there be judgment in favor of plaintiff, Mrs. Henrietta Neider Henderson, and against the defendant, Continental Assurance Company, in the full amount of $3000. It is further ordered that the case be remanded to the district court in order that plaintiff may establish, if she can, the date on which she requested forms from the insurance company on which to make proof of death, and, if that date can be fixed with certainty, it is ordered that there be judgment in plaintiff's favor, and against the defendant, for 5 per cent per annum interest on $3000 from that date until paid; otherwise, it is ordered that there be judgment in her favor for 5 per cent per annum interest from date of judicial demand until paid. All costs are to be paid by defendant-appellee.