170 So.2d 745 (1964)
Eva Lamy LOUBAT et al.
v.
AUDUBON LIFE INSURANCE COMPANY.
No. 6265.
Court of Appeal of Louisiana, First Circuit.
December 21, 1964.
Rehearing Denied February 3, 1965.
Writ Granted March 12, 1965.
*746 Watson, Blanche, Wilson, Posner & Thibaut, by David W. Robinson, Baton Rouge, for appellants.
Sanders, Miller, Downing, Rubin & Kean, by R. Gordon Kean, Jr., Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY, and REID, JJ.[*]
LANDRY, Judge.
This is an action by the widow and daughter of the late Sterling F. Loubat to recover upon a group credit life insurance policy allegedly issued by defendant, Audubon Life Insurance Company, (sometimes hereinafter referred to simply as "Audubon"), upon the life of the aforenamed decedent. Defendant reconvened praying for reformation of the "certificate" or "statement of insurance" issued Mr. Loubat to show that plaintiff, Mrs. Sterling F. Loubat (born Eva Lamy) was the named insured therein rather than the deceased. From a judgment of the trial court dismissing plaintiffs' suit and also rejecting defendant's reconventional demand, plaintiffs and defendant have appealed. Since all litigants have appealed, it will be noted that hereinafter whenever the terms "appellants" and "appellee" are used they shall be deemed to refer to plaintiffs and defendant, respectively.
The events giving rise to the instant litigation are undisputed and were adduced by way of an agreed stipulation of facts which discloses that Audubon issued a group life policy to Commercial Securities Company, (sometimes hereinafter referred to as "Commercial"), designating Commercial as "creditor" and purporting to insure certain "debtors" of Commercial. The master policy appearing in evidence defines eligible "debtors" as those who signed both "personal and commercial notes" held by Commercial and provides for their coverage under its provisions simultaneous with their becoming a debtor of the eligible class. While no certificate or statement of insurance was required to effect the coverage contemplated in the master policy, nevertheless, it was the custom of Commercial to issue each of its eligible debtors a "statement of life insurance protection" reciting in substance the debtor had become insured under a group Life Insurance Policy issued by Audubon pursuant to which certain amounts would be paid Commercial upon the debtor's death as provided for in the "statement of Life Insurance Protection" and the master policy itself.
On October 19, 1962, Mrs. Loubat purchased from Colonial Buick a new, 1962 Buick automobile. In representation of the unpaid portion of the agreed purchase price she executed a promissory note payable to the order of herself (Mrs. Sterling F. Loubat) and by her duly endorsed in blank and as security therefor granted a chattel mortgage *747 on the vehicle in question. With no endorsement other than that of appellant, Mrs. Loubat, and Colonial Buick, the aforesaid note and chattel mortgage were negotiated by Colonial to Commercial which latter concern transferred the information contained on an accompanying document known as a "customer statement" to one of its own customer statement forms and in so doing dropped the "Mrs." and listed the name of the customer or debtor as "Sterling F. Loubat". The aforesaid error resulted in the issuance by Commercial of a certificate of insurance denominated "Statement of Life Insurance Protection" listing the insured as "Sterling F. Loubat". The note and chattel mortgage expressly authorized vendor Colonial Buick to secure "Creditor Insurance on Mortgagor's Life", includes a charge for such insurance and authorizes its payment to vendor or assignee in an amount equal to the balance remaining unpaid at mortgagor's death. Mr. Loubat did not sign or endorse the note, chattel mortgage or any accompanying documents. On November 4, 1962, Mr. Loubat died. Defendant declined to pay Commercial the balance due on the note executed by Mrs. Loubat and this suit followed.
In substance plaintiff, both in the trial court and on appeal, makes the following contentions: (1) Decedent was a "debtor" within the meaning of the term as contained in the master policy because as head and master of the community he was secondarily, if not primarily liable, for the debt contracted by his wife, and; (2) if decedent was not in fact a debtor the "statement of life insurance protection" issued by defendant through the error of its agent, Commercial, constituted a contract of insurance which Audubon is estopped to deny and pursuant to which any defense available under the group policy is deemed waived.
Appellee, however, maintains coverage of Mrs. Loubat under the master policy was simultaneous with her execution of the note and chattel mortgage inasmuch as issuance of a certificate of insurance is not required by the Insurance Code in cases involving group policies. On this premise appellee maintains the "statement of life insurance protection" erroneously issued in decedent's name was not necessary to effect coverage consequently it was of no legal effect and could not operate to afford coverage contrary to an express policy provision. In this connection it is further contended that since decedent was not a debtor from whom Commercial held a "personal and commercial note", by the very terms of the group policy he was excluded from its coverage.
Our learned brother below concluded decedent, Sterling F. Loubat, was not a debtor as defined in the group policy inasmuch as he admittedly had not signed a personal and commercial note consequently the policy in question afforded no coverage on his life. With regard to appellants' contention the "statement of life insurance protection" issued decedent was a contract of insurance binding upon appellee, our esteemed colleague concluded (1) the statement furnished decedent was a mere "business courtesy" not required by the policy and was not a certificate of insurance and therefore without legal effect; (2) Commercial was not the agent of Audubon; and (3) assuming, arguendo, Commercial to be the agent of appellee, waiver and estoppel were unavailable to bring within the policy coverage a risk not contemplated by the terms of the master contract. Defendant's reconventional demand was rejected on the premise that since the "statement of life insurance protection" issued decedent was of no legal effect, reformation of the contract was unnecessary inasmuch as the intended insured, Mrs. Loubat, was covered by the master policy notwithstanding issuance of the certificate to her now deceased spouse.
We shall consider first appellants' contentions the trial court erred in holding Commercial was not acting as agent of Audubon and in further holding the certificate of insurance issued decedent, Sterling F. Loubat, was of no legal efficacy.
The stipulation of record discloses Audubon issued the master policy in question *748 to Commercial and agreed to insure Commercial's debtors eligible thereunder. In addition, Audubon furnished Commercial blank forms to be completed by Commercial's employees and forwarded to persons insured under the group policy advising them of their coverage under and subject to the master policy between Audubon and Commercial, all with Audubon's knowledge and consent. Under such circumstances we conclude upon authority of Neider v. Continental Assur. Co., 213 La. 621, 35 So.2d 237, 2 A.L.R.2d 846, and Finch v. Baton Rouge Production Credit Association, La. App., 154 So.2d 60, Commercial was the agent of Audubon.
In sustaining defendant's contention that the "statement of insurance protection" issued by Commercial was a mere "business courtesy" without legal effect, our learned brother below fell into error. Our careful consideration of LSA-R.S. 22:176 (the applicable section of the Insurance Code) discloses that while the statute does not require issuance of a certificate of insurance to an insured under a group life policy, neither does it prohibit the issuance of a certificate of insurance in such instances. The stipulation of facts pursuant to which the instant case was submitted recites that appellee elected to furnish each insured a printed certificate or statement containing the information contemplated by the provisions of the Insurance Code requiring the issuance of such certificates in other types of group insurance so that the certificate issued by defendant herein conforms to what is normally considered a certificate of insurance. The fact that the certificate form is usually filled out by employees of appellee's agent, Commercial, is of no consequence. Under such circumstances the effect is the same as though the certificate were executed by appellee's employees.
As a certificate it forms part of the insurance contract, the remaining portion of which is the master policy, consequently, we believe this entire matter hinges upon the question what effect is to be given such a certificate.
In insurance matters, where a discrepancy exists between a "slip" or "rider" and the policy itself, the provisions of the former control. Corporation of Roman Catholic Church of Eunice v. Royal Ins. Co., 158 La. 601, 104 So. 383; L. Blanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So. 2d 245. In Corporation of Roman Catholic Church of Eunice v. Royal Ins. Co., supra, the Supreme Court quoted with approval the following language relating to the effect of slips and riders, to-wit:
"`Such slip or rider will be construed in connection with the printed provisions of the policy and the entire contract harmonized if possible; but, if there is an irreconcilable conflict, the slip or rider will control.' C.J. vol. 26 pp. 76, 77."
The jurisprudence is firmly established to the effect that where the provisions of an insurance policy or contract are ambiguous the incertitude will be most strongly construed against the insurer. Corporation of Roman Catholic Church of Eunice v. Royal Ins. Co., supra; Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777; Beard v. Peoples Industrial Life Ins. Co. of Louisiana, La.App., 5 So.2d 340; Barnett v. City of Monroe, La.App., 124 So.2d 249.
Before proceeding to further discussion of the ambiguity which results in the instant case from construing the certificate issued herein together with the policy provisions, we deem it advisable to set forth certain pertinent rules of interpretation.
Apropos the question at hand is the rule of reasonable interpretation succinctly and clearly set forth in 44 C.J.S. verbo Insurance § 296, page 1164, as follows:
"§ 296. Reasonable Interpretation
"A contract of insurance should be given a fair reasonable, and sensible construction.
"A contract of insurance should be given a fair and reasonable construction *749 and, likewise, should be given a sensible construction, consonant with the apparent object and plain intention of the parties; a construction such as would be given the contract by an ordinary intelligent business man; and a practical and reasonable rather than a literal interpretation. The contract should not be given a strained, forced, unnatural, or unreasonable construction, or a construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical and ineffective."
In Beard v. Peoples Industrial Life Ins. Co. of Louisiana, 5 So.2d 340, the court made the following pronouncements germane to the issue before us:
"If the intention is clear, the courts are without right to change the contract in any particular; it is the law between the parties. But if the policy's language is uncertain or ambiguous, and more than one construction is possible, the construction most favorable to the insured will be applied. Also, if one of two possible interpretations would lead to an absurd conclusion it must be abandoned, and that which appears to be more consistent with reason and probability will be adopted." (Emphasis added.)
Regarding the effect to be given the component provisions of an insurance contract, the Supreme Court, in Hemel v. State Farm Mut. Auto Ins. Co., 211 La. 95, 29 So.2d 483, stated:
"Effect must be given to every part of the agreement if it is possible and while it is the universal rule of construction that all ambiguities must be construed in favor of the insured and against the insurer, when the intent of the parties is evident from the terms of the contract there is nothing for the court to construe and the policy must be given a reasonable interpretation consonant with the apparent object and plain intent of the parties." (Emphasis added.)
In the instant case the obscurity results from the terms of the master policy as applied to the person named as the insured in the statement of life insurance protection.
The master policy in question is in favor of Commercial and insures the lives of Commercial's debtors. It provides for payment to Commercial, upon proof of death of any of Commercial's debtors, of an amount equal to the debtor's unpaid indebtedness to Commercial up to $5,000, whichever is smaller. Such payments when made are to be applied to the indebtedness of the debtor. The term "debtor" is defined in the policy as follows:
"* * * any person of the class or classes of persons defined in the application for this policy and whose indebtedness to the creditor is of the kind or kinds defined in the application for this policy."
The application for the policy defines eligible debtors as those between the ages of 18 and 65 who sign both personal and commercial notes not exceeding 36 months duration.
It is readily conceded by appellants that decedent, Sterling F. Loubat, although named in the certificate as the insured, did not execute a note to Commercial. It follows said decedent is not a debtor within the meaning of the term as defined in the master policy. Consequently, a patent discrepancy arises herein between the terms of the master policy which exclude said decedent from the class of persons insured and the certificate which names him as an insured.
Learned counsel for appellants cites Quinones v. Life & Casualty Insurance, 209 La. 76, 24 So.2d 270, in support of the general rule that policy provisions in favor of the insurer may be waived. In addition counsel relies upon Tarbutton v. First National Life Insurance Company, La.App., 17 So.2d 365, in support of the principle that *750 requirements as to the status of an insured may be waived inasmuch as in the quoted authority it was held that issuance of a policy showing decedent as the named insured constituted relinquishment of the requirement the insured be dependent on his parents.
No citation of authority is needed in support of the principle that issues of waiver and estoppel must be adjudged in the light of the facts and circumstances of each individual case. The foregoing rule is applicable not only as to the existence of waiver or estoppel but also the effect thereof.
Counsel for appellants argues the purpose of the certificate issued by defendant was to evidence extension of coverage of the master policy to include the named insured, Sterling F. Loubat, and further show that any condition or provision in the master policy to the contrary was waived as to the identity of the insured and the amount for which he was insured.
Conceding the certificate can properly evidence a waiver of policy provisions herein, we must then examine the result of such conclusion and determine whether the effect thereof may be said to have been reasonably contemplated by the parties.
While the stipulation of facts submitted herein does not expressly so state, the clear and logical inference to be drawn therefrom is that the group policy issued Commercial by Audubon was unquestionably for the protection of Commercial who thereby provided a certain, orderly and expeditious means of payment and collection of the unpaid balances due on the accounts of its debtors who died. Equally clear, by inference as well as from the terms of the master policy itself, is the fact that neither appellee nor Commercial contemplated that any persons other than actual debtors of Commercial were to be insured in such fashion.
The policy or contract in question provides for payment of the indebtedness of the insured to Commercial in the maximum of $5,000. If appellants' contention is correct, what then is defendant's obligation under the contract?
In Columbia Finance Corporation v. Robitcheck, 243 La. 1084, 150 So.2d 23, the Supreme Court squarely held a husband is not liable on a note signed only by his wife. Plaintiffs' astute counsel, however, nevertheless contends the note was endorsed to Commercial with recourse, therefore, although Commercial could not have prosecuted an action against Mr. Loubat directly, it could have done so against Colonial Buick Company, as endorser, and the latter in turn as vendor could have proceeded against decedent.
There is some question whether the endorsement by Colonial Buick was intended to be with or without recourse. It appears from the chattel mortgage with which the note is identified that the endorsement is intended to be without recourse. However, the endorsement on the note itself makes the endorsers guarantors of payment and provides that suit may be instituted against said endorsers whether or not suit has been commenced against the maker. It is unnecessary to resolve this seeming contradiction inasmuch as we may assume, arguendo, the endorsements were with recourse. Irrespective of such endorsement Mr. Loubat was not liable on the note because the rule announced in Columbia Finance Company v. Robitcheck applies to an unqualified as well as a qualified endorsement in the absence of an express or specific assignment or transfer of the vendor's rights against the husband. No such express or specific assignment or transfer is even suggested herein. Therefore, Mr. Loubat's obligation to Colonial Buick, if any, must perforce arise solely from the circumstance his wife purchased an automobile.
The obligation of the husband for debts contracted by his wife does not arise, ipso facto, and as a matter of course upon *751 the contraction of each debt by the latter. For liability of the husband to attach in such circumstances it must be shown either that the wife acted as the husband's authorized agent incurring an obligation on his account, or the debt represented the purchase of necessities which the husband failed to provide, or that the husband ratified the purchase by subsequent consent and acquiescence therein express or implied. Neither of the requisites indispensable to obligate Mr. Loubat under his wife's purchase in question have been shown herein from which it inevitably follows no debt has been established as owing either to Colonial Buick or Commercial, directly or indirectly. Insofar as the record indicates, Mrs. Loubat was solely responsible for the debt in question.
In such cases of ambiguity, extrinsic matters such as attending circumstances may be considered in determining the meaning and intent of the policy. 44 C.J.S. verbo Insurance § 304, page 1224. For this reason we conclude the honorable trial court properly overruled appellants' objection to the documentary evidence adduced by appellee to establish the circumstance of the error involved herein as well as other events surrounding the entire transaction.
We note the chattel mortgage executed in conjunction with the note signed by Mrs. Loubat, provides as follows:
"4b. CHARGE FOR CREDITOR INSURANCE ON MORTGAGOR'S LIFE (include this item if mortgagor has authorized vendor to apply for the insurance) .......... $116.33 (4b)
* * * * * *
"10. If a charge for Creditor insurance on the life of the Mortgagor is included in item 4b on the face of this contract, the mortgagor hereby specifically requests and authorizes the vendor or assignee, in its or their own name, to procure from the Prudential Insurance Company of America insurance against the contingency of the mortgagor's death occurring prior to the 15th day after the date herein provided for payment of the final installment hereunder, such insurance to terminate automatically prior thereto at the earliest of the following dates: (1) the date on which the unpaid balance of the obligation hereunder is fully paid, in the event of prepayment thereof; * * *. Such insurance shall be payable to the vendor or assignee, or both, in an amount equal to the balance remaining to be paid hereunder on the happening of such contingency prior to termination of the insurance; provided, however, that the amount of insurance shall not exceed $7,500 notwithstnading that the balance then remaining to be paid hereunder may be in excess of said maxim amount. If and when received, the proceeds of said insurance shall be applied in the payment of the obligation under this mortgage to the extent of such proceeds. * * *"
The foregoing provisions constitute indisputable evidence of Mrs. Loubat's intention as regards insurance coverage, irrespective of the fact insurance was not discussed with her at the time of purchase.
In essence the provisions of the master policy are substantially same as the foregoing terms of the chattel mortgage excepting the maximum insurance is fixed at $5,000.00.
Under the circumstances shown it cannot be disputed that Mrs. Loubat was the debtor of Colonial and upon transfer of her note to Commercial she became obligated to the latter and was, at the vital moment, a debtor of Commercial within the policy definition. Considering such events, we have no hesitancy in holding (as did our esteemed colleague below) that, had Mrs. Loubat died, defendant herein would have been obligated to pay her indebtedness to Commercial.
To hold that decedent, who was not a debtor of Commercial, was the true *752 insured is tantamount to holding the premiums paid Audubon were totally without consideration because in such event Audubon would have been required to pay nothing upon decedent's death. The master policy unambiguously stipulates the liability of the insurer is limited to the unpaid indebtedness of the insured to Commercial, if any, not exceeding $5,000.00. We fail to see wherein it could logically or reasonably be argued that this clear, explicit and easily understandable provision could be accorded any interpretation other than relieving the insurer of any liability whatsoever in the absence of showing a debt due by decedent to Commercial.
The conclusions reached herein coupled with appellee's acknowledgment of Mrs Loubat as the real insured, obviates the necessity of our granting defendant's prayer for reformation of the contract. We believe our decision, as it stands, amply defines and protects the rights and positions of the litigants involved.
Accordingly, the judgment of the trial court is affirmed at appellants' cost.
Affirmed.
NOTES
[*] Due to the death of HERGET, J., prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by ELLIS, LOTTINGER, LANDRY and REID, JJ.