350 So.2d 948 (1977)
Myra F. WOODARD, Plaintiff-Appellant,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.
No. 13327.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1977.
Rehearing Denied October 31, 1977.
Writs Refused December 14, 1977.
*949 Bethard & Davis by Henry W. Bethard, III, Coushatta, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by Neilson S. Jacobs, Shreveport, for defendant-appellant.
Before BOLIN, HALL and JONES, JJ.
En Banc. Rehearing Denied October 31, 1977.
JONES, Judge.
Plaintiff and defendant appeal a judgment awarding plaintiff 12% penalties and attorneys' fees under LSA-R.S. 22:658 for defendant's failure to timely pay a disability claim under a blanket health and accident policy. We affirm.
On June 19, 1975, plaintiff sustained injuries in an automobile accident which permanently disabled her. At the time of her injury plaintiff had outstanding loans with Barksdale Federal Credit Union ("Barksdale") payment of which was insured by defendant. The health and accident policy was issued to the Trustees of the Federation of Louisiana Credit Union Insurance Trust and Barksdale was a participating credit union in this trust.
Plaintiff notified Barksdale within one month of her injury and inquired into the existence of insurance to pay the loans. She was advised Barksdale carried insurance, *950 but was not told the insurer's name. For seven months plaintiff unsuccessfully attempted to obtain claim forms to apply for payment of the loans. She contacted Barksdale at least six times by telephone and made one visit to the office. Plaintiff received a letter from Barksdale on February 25, 1976, advising her of insurance which would cover the loans if she was completely disabled. On February 27, she advised Barksdale she probably would never be able to return to work. Barksdale sent her claim forms on March 1.
Plaintiff filled out the claimant's statement March 31, her physician filled out his statement April 13, and these documents were returned to the credit union as per instructions on the claim form. Plaintiff had no other address for Prudential Insurance Company.
In May plaintiff contacted Barksdale to see if her loans had been paid and was told the forms had not been forwarded to Prudential. On June 9 Barksdale filled out its portion of the form showing a balance of $9,092.86, and these forms were transmitted to defendant by letter dated June 12. The claim forms were received by defendant June 22. Defendant approved plaintiff's disability July 21, but delayed authorizing payment until September 14 because it interpreted a Barksdale ledger sheet as ambiguous as to the unpaid balance of plaintiff's loan.
The first issue on appeal is which penalty provision applies to this blanket health and accident policy  LSA-R.S. 22:657(A) which provides 100% penalties and attorneys' fees if the claim is not paid within 30 days of receipt of proof of loss, or LSA-R.S. 22:658 which provides 12% penalties and attorneys' fees if the insurer arbitrarily and capriciously refuses to pay within 60 days after receipt of proof of loss and demand.
The second issue presented on appeal is do the circumstances surrounding payment of plaintiff's claim entitle her to penalties and attorneys' fees under the applicable statutory provision.

WHICH PENALTY PROVISION APPLIES?
Defendant's policy provided for payment of insured loans in one lump sum to the credit union to discharge the borrower's indebtedness in the event the borrower became totally and permanently disabled.
In Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646 (1965) the Supreme Court, in discussing the applicability of LSA-R.S. 22:657(A) to a lump sum claim under a health and accident policy, stated:
"A reading of Section A of LSA-R.S. 22:657, supra, clearly shows that the Legislature intended that this section be applicable to small claims (hospital, medical, etc.) and monthly disability payments. Such intent is expressed in the sentence, `The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments.' Immediately following the preceding sentence is the 100% penalty provision. LSA-R.S. 22:657 expresses no intent to award a 100% penalty on a lump sum which could be as high as $100,000.00. We conclude that the penalty provision and attorney's fees provision of LSA-R.S. 22:657 are not applicable to plaintiff's claim." Id., page 653.
In Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App., 3d Cir. 1971), the court in a case indistinguishable from the one here appealed, rejected the 100% penalty and attorneys' fees provisions of R.S. 22:657(A) and applied the less harsh provisions of R.S. 22:658 to a lump sum claim situation.
The trial court was correct in interpreting defendant's policy to provide for a lump sum payment and in holding the penalty provisions of LSA-R.S. 22:658[1] applicable.

*951 DID DEFENDANT PAY WITHIN SIXTY DAYS OF DEMAND?
Defendant argues the trial court erred in assessing penalties and attorneys' fees because under R.S. 22:658 demand is required in addition to submission of proof of loss before the 60 days commences to run. Defendant urges no demand was made until plaintiff's attorney wrote a demand letter August 27, and defendant's payment of the loss on September 14 was made within 60 days of this letter. A careful examination of the documents received by defendant on June 22 reflects three parts. One is entitled Claim for Disability Benefits, or Claimant's Statement. This statement, which is signed by claimant, contains information concerning claimant's name, address, occupation, nature and date of injury or illness, name and address of treating physician, and medical history. On the back of Claimant's Statement is the second form entitled Attending Physician's Statement, which was filled out by plaintiff's physician, in which he described the nature and extent of plaintiff's disability. The third portion styled Creditor's Beneficiary Statement, and signed by the manager of Barksdale certifies plaintiff's loan balance.
Webster's New Twentieth Century Dictionary, unabridged, includes among definitions of claim as a verb: to call for; to demand as due; and among synonyms given are: ask; demand; insist; and require; and as a noun it is defined as a demand for something rightfully or allegedly due; the assertion of one's right to something. From these definitions of claim the document entitled Claim for Disability Benefits submitted by plaintiff meets the requirement of demand as required by LSA-R.S. 22:658, and together with the attached Physician's Statement and Creditor's Statement, meet the requirements for a proof of loss.
In Steadman v. Pearl Assurance Company, 167 So.2d 527 (La.App., 4th Cir. 1964) the court recognized a proof of loss and supporting documents could constitute demand for payment, and when this was the case no additional demand was necessary. The 60 days commenced to run upon receipt of the demand and proof of loss. The language of the court is as follows:
"This would apply only where there was no previous demand and where the proof of loss alone could not be construed as a demand in itself. It would be absurd to require a second demand to be made after sixty days, merely because the insurer had passively refused payment by sixty days of silence as in this case. Such an interpretation would defeat the purpose of the statute and give the insurer additional time not intended." Id. p. 530.
In Steadman the letter forwarding the proof contained the following words: "Your prompt, attention in concluding the claim would be greatly appreciated. . ." (emphasis added). The court held this constituted demand. In light of the frequent use of claim and claimant on the document accompanying the proof of loss in the instant case, no additional demand was necessary because the use of the word claim on the form in numerous places was synonymous with use of the word demand.
In Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App., 1st Cir. 1965), the court discussing the demand requirement of the statute, stated:
"Demand, when required may be either written or oral so long as it be shown to have fully informed and apprised the insurer of the insured's intention to press for or demand payment of the claim submitted. It is significant that the statute . . . does not require written demand. What constitutes demand, however, *952 is to be determined in the light of the facts and circumstances of each individual case. . . ." Id. p. 202.
Plaintiff's persistence in seeking information about the existence of insurance coverage, executing claimant's statement, securing her physician's statement, and urging Barksdale to execute their form and mail these documents to the insurer, reflects her full intention to press for and demand payment of her claim, and constitutes demand as required by the statute.
Under the trust agreement Barksdale was obligated to supply Prudential the names of borrowing members and amounts of their insured loans, to deliver and perhaps prepare the certificate of insurance to borrowing credit union members and to supply Prudential with necessary claim information. In consideration of Barksdale's services, defendant refunded 1% of premiums to the trustees and Barksdale was entitled to participate in this refund. Under these circumstances Barksdale is an agent of defendant. The knowledge of Barksdale as defendant's agent of plaintiff's pressing pursuit to collect her claim is attributable to defendant. Mistric v. Republic National Life Insurance Company, 314 So.2d 472 (La. App., 1st Cir. 1975); Neider v. Continental Assurance Company, 213 La. 621, 35 So.2d 237 (1948).

WAS DEFENDANT ARBITRARY AND CAPRICIOUS?
Under the provisions of LSA-R.S. 22:215[2] defendant was required to furnish plaintiff a certificate of insurance advising her of the benefits, method of presenting notice of claim, proof of loss and name and address of the insurer.
Defendant failed to provide this certificate to plaintiff. There is evidence indicating blank certificates were made available to Barksdale, defendant's agent, with instructions to provide members with the required certificate. Plaintiff denied having any knowledge concerning the insurance establishing she never received such a certificate. Had she received the certificate containing the required information, she could have made her demand and submitted her proof of loss direct to defendant instead of being required to refer her insurance affairs to the inefficient handling of Barksdale.
Considering these circumstances Prudential had possession of demand and proof of loss at least by June 9, 1976, when Barksdale, while in possession of claimant's statement and attending physician's report, prepared its appropriate form reflecting the unpaid balance of plaintiff's loan.
Defendant received the claim forms on June 22, and following investigation, approved plaintiff as totally and permanently disabled July 21. Defendant failed to pay the claim on this date because the claim examiner believed Barksdale's ledger sheet did not establish the balance of plaintiff's loan. When the ledger sheet is considered in conjunction with the certification sheet of Barksdale, there is no reason why the unpaid balance of plaintiff's loan was not discernible. The certification sheet, signed by the manager of Barksdale, states the balance to be $9,092.86, and an examination of the ledger does not show this figure to be incorrect.
Defendant should have examined the ledger sheet and attached document upon receipt on June 22, and, if it considered same ambiguous, immediately made further inquiries of Barksdale as to the correctness of the balance. This it failed to do, but waited 30 days at which time it attempted to clarify the balance by writing letters to Barksdale. This mode of communication, due to Barksdale's failure to promptly answer the first letter, resulted in defendant taking from June 21 to September 14, approximately 84 days, to approve and pay *953 the claim. Defendant could have made a telephone call to Barksdale on the 21st day of July to clarify any uncertainty concerning the balance instead of corresponding by mail.
Defendant's failure to investigate the account balance promptly upon receipt of claim documents or by telephone at the later date is without justification. Under these circumstances defendant's failure to pay plaintiff's claim within 60 days of receipt is arbitrary and capricious and subjects defendant to payment of penalties and attorneys' fees.
For reasons assigned, we affirm at defendant's costs.
NOTES
[1] LSA-R.S. 22:658

"All insurers issuing any type of contract other than those specified in R.S. 22:656 (applicable to life insurance policy) and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss,. . . ." (explanation added).
[2] LSA-R.S. 22:215(A)(3)(g):

". . . The insurer shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer. * * *"