GAUDIN, Judge.
This appeal from the 29th Judicial District Court concerns the duty of care owed by an employer to its employees with regard to the securing of a group medical insurance plan.
Judgment in the amount of $6,392.00 was rendered in favor of the deceased employee’s surviving husband, Israel Passman, and against Mrs. Passman’s employer, Schwegmann Brothers Giant Supermarkets, Inc., because a Schwegmann executive, according to the trial judge, had not exercised due care in recommending an out-of-state company that later went into receivership and was unable to fully satisfy the Passman claim'.
On appeal, Schwegmann contends (1) that the executive in question did act with due care and that he was in good faith and (2) that Schwegmann can’t be held responsible for the company’s subsequent insolvency.
For reasons following, we find no breach of duty on Schwegmann’s part, and we set aside the judgment in appellee’s favor.
FACTUAL BACKGROUND
In September of 1976, Schwegmann was notified that Blue Cross was cancelling its group medical policy effective November 1, 1976. With time of the essence, Joseph Warnke, Director of Personnel, was given responsibility for finding a replacement company.
Warnke consulted Schwegmann’s comptroller vice president, who told him about a hospitalization plan described “... in correspondence that he (the comptroller) got from the Louisiana Retail Food Dealers Association...” Warnke then contacted the association, and was referred to Common Market Benefit Association, a company domiciled in Phoenix, Arizona. Warnke said he contacted a friend in the insurance business and was advised that Common Market was a relatively new company with no apparent problems.
At Warnke’s request, Common Market sent a representative to Louisiana and he presented Common Market’s hospitalization plan to Warnke, who then offered it to Schwegmann employees.
There was no obligation to join, but if an employee did sign up, Schwegmann would deduct premiums from paychecks and provide forms if a claim was to be made. Schwegmann did not receive a fee for these services.
Mrs. Passman did join the plan. In January of 1977, she was diagnosed as having cancer of the pancreas and she died shortly thereafter. Before becoming insolvent, Common Market paid the $3,000.00 death benefit claim and offered an additional $2,000.00, which was rejected. This litigation ensued.
THE FEDERAL ACT
In his “Reasons for Judgment,” the trial judge concluded that Schwegmann’s “... duty of due care was not met...” and noted that Warnke had not sought an opinion from the Louisiana Insurance Commission before recommending Common Market.
Mrs. Mary Robinson, a 25-year employee and the general counsel of the Insurance Commission, testified at the trial that had Warnke called her office, he would have *1200 been told that Common Market and similar self-funding companies were formed in accord with the Employee Retirement Income Security Act of 1974. Under this federal act, Common Market received funds from the United States government; and in 1976, claims were being processed and paid from the initial federal deposit and from collected premiums.
While Mrs. Robinson could have advised Warnke that Common Market had no statutorily-established reserve to pay claims and had no registered agent in Louisiana for service of process, she was in no position then to know that Common Market and similar companies would not last.
Mrs. Robinson stated that companies formed under the federal act were now (at time of trial) a bad risk. She was asked, however, about the status of these companies in November and December of 1976.
She replied:
“Five years ago, I am not sure because the track record was not that bad ... they were still using the federal funds and had plenty money to operate.”
The record is devoid of even a suggestion that Warnke in 1976, no matter how diligent, could have uncovered a clue or warning about Common Market’s eventual collapse.
STANDARD OF CARE
The trial judge in his “Reasons for Judgment” and appellee in his brief cite Neider v. Continental Assur. Co., 213 La. 621, 35 So.2d 237 (1948), and Woodard v. Prudential Insurance Company of America, 350 So.2d 948 (La.App. 2nd Cir.1977).
Although these cases (and the others referred to by appellee) are concerned mostly with employers acting negligently as agents for insurance companies, this wording in Neider is significant:
“... the employer owes to the employee the duty of good faith and due care in attending to the policy...”
The trial judge properly applied a like standard of care to Schwegmann in the obtaining of the group plan. In imposing such a standard, the prime considerations are the conditions and circumstances as they were in September, 1976, when Blue Cross gave short notice that it was terminating coverage as of November 1st. This standard cannot be influenced by Common Market’s eventual failure.
Warnke understandably contacted the Louisiana Retail Food Dealers Association, which referred him to Common Market. While a call to the Insurance Commission would have revealed that federally-established and federally-funded companies had no statutorily-established reserve, how was he to suspect that the initial funds and collected premiums would ultimately be inadequate to satisfy claims? These companies were established and funded by the United States government, supposedly under federal supervision and approval.
We are of the opinion that the trial judge erred in deciding that Warnke did not use due care.
HOLDING
We hold that an employer does not breach the duty of care owed to its employees by recommending a federally-established and federally-funded company that apparently is functioning well and paying its claims from the original deposit and from collected premiums, notwithstanding the fact that the company has no statutorily-set reserve and no registered agent for service of process.
Accordingly, we reverse the appealed-from decree of the 29th Judicial District Court and render judgment in favor of Schwegmann and against appellee.
REVERSED.
GRISBAUM, J., dissents.