SHORTESS, Judge.
Clarence Rabun (Rabun) brought suit against his former employer, Buquet Ice Co., Inc. (Buquet); Coastal States Life Insurance Company (Coastal); and Mutual Security Life Insurance Company (Mutual). *482 He sought to recover medical and hospital expenses incurred by his wife.
Effective January 1, 1982, Coastal issued a group hospitalization and medical care insurance policy to Buquet covering, among others, Rabun and his wife Ruby. On September 20, 1982, Ruby Rabun was diagnosed with the disease that eventually led to her death on June 20, 1985. Coastal paid benefits under the terms of its coverage for two periods of her hospitalization— September 20 through October 8, 1982, and January 3 through January 14, 1983.
On January 14, 1983, Rabun was terminated from Buquet’s employ. Michael Sor-bert, Buquet’s president and owner, agreed to retain Rabun on Buquet’s group plan. Rabun testified that he expressed concern regarding maintaining his hospital insurance and that, in response, Sorbert advised:
that if I wanted to keep a continuous coverage on hospitalization I would have to pay the entire premium, the part that he was paying plus the part that I was paying.
Thereafter, Rabun made premium payments to Buquet. Both Rabun and Sorbert testified that Rabun was not informed or aware of the right upon his termination to convert to individual coverage under the provisions of the Coastal policy.[1] Prior to the May 1, 1983, expiration of that policy, some months after Rabun’s termination, Coastal informed Buquet that it would not renew. Mutual was contacted in March, 1983, and thereafter issued a group policy to become effective upon expiration of the Coastal policy.
As was also the procedure used in obtaining coverage from Coastal, Mutual’s enrollment cards were forwarded to Buquet to be completed by the individuals to be covered. Buquet employees were assisted in completing these forms by Buquet management. Buquet forwarded a form to Rabun. He completed the form and was maintained on Buquet’s policy until February of 1984. Buquet notified Mutual, at that time, that Rabun was not an employee. Only then, in February of 1984, was Rabun advised of a conversion privilege under Mutual’s policy similar to the one in Coastal’s policy. Mutual’s terms of conversion from group to individual coverage were not acceptable to Rabun.[2]
The consolidated proceedings at bar include a suit against Rabun for debts resulting from his wife’s illness, which is not before this court, and Rabun’s suit against Buquet, Coastal, and Mutual, which is. The latter proceedings, following trial on the merits, resulted in a judgment in Ra-bun’s favor and against Coastal for $24,-839.53, less a credit of $4,768.16 for the premiums from February, 1984, the date Rabun was no longer carried on the Mutual policy, through June, 1985, the month Ruby Rabun died. Rabun’s claims against Bu-quet and Mutual, including his claim for attorney fees, and Coastal’s third party demand against Buquet, were dismissed. Rabun did not appeal. Coastal appeals both the judgment against it and, alternatively, the dismissal of its third party de *483 mand.[3]
In order to hold Coastal liable for expenses incurred not only after Rabun’s termination but also after the expiration of the terms of Coastal’s policy, the trial court “judicially reformed” the automatic termination clause [4] that was -
activated by the involuntary termination of Mr. Rabun’s employment ... to suspend the termination of benefits for the claim for expenses incurred for Mrs. Ra-bun’s fatal illness, which claim originated before the termination of employment.
The trial court relied on Cataldie v. Louisiana Health Service and Indemnity Company, 456 So.2d 1373 (La.1984). In Cataldie, a cancellation provision of a non-group policy was found to have been in conflict with LSA-R.S. 22:213(B)(7).[5] Group policies are exempt from the operation of LSA-R.S. 22:213 by virtue of LSA-R.S. 22:221.[6] Group policy coverage may be limited to expenses incurred during the term of coverage. LeBlanc v. Travelers Insurance Company, 486 So.2d 828 (La.App. 1st Cir.1986). Neither Cataldie nor LSA-R.S. 22:213(B)(7) apply to the facts at bar.
The management of Buquet helped its employees — laborers, ice truck drivers, or men, like Rabun, who performed maintenance work — to complete their enrollment cards. Additionally, Buquet accepted the responsibility for forwarding the enrollment cards. Buquet forwarded the premiums directly to Coastal, but it is unclear as to whether Buquet paid the entire premium or just the employer’s portion.
In Neider v. Continental Assurance Company, 35 So.2d 237 (La.1948), a “master policy” was issued by Continental to Illinois Central System. Premiums were to be paid by the employer, although the policy contemplated employee contributions. An employee, Mr. Henderson, became ill and ceased working. In order to maintain coverage, because deductions would no longer be made, Henderson inquired of a clerk (apparently in the employer’s accounting office) when his contributions should be made and was informed he would have to contribute “as long as he was not on the payroll.” 35 So.2d at 239. Because of employer-created transmittal problems, a premium was not received, and Continental resisted payment of benefits, asserting that Henderson’s coverage had lapsed. The court held that the employer had a duty of “good faith” and “due care” in attending to the policy, which was breached; and, that because the employer assumed the position of “administrator of the policy,” any omission of duty to the employee in its administrative function was attributable to the insurer. 35 So.2d at 240.
The policy considerations deemed important by the Neider court were articulated as follows:
It has been pointed out that the purpose of this form of insurance is to provide the employer with a means of procuring insurance protection for his employees and their families at the lowest possible cost, and that the employer’s making this form of insurance available to his employees results in the creation of good will between the employer and the employee, enables the employees to carry a larger amount of insurance than they could otherwise, and helps to attract and *484 hold a permanent class of employees. These results could be defeated if the employer, by poor administration of the insurance, could be instrumental in causing the insurance to become unavailable to the employee.
Id. (Citations omitted; emphasis ours.)
This court, in Mistric v. Republic National Life Insurance Company, 314 So.2d 472 (La.App. 1st Cir.), writ denied, 319 So.2d 444 (1975), applied the Neider rationale where the employer (the group policyholder) failed to forward a new employee’s timely request for coverage. As a new employee, Mistric was afforded a grace period to elect coverage without submitting evidence of insurability, but his request was forwarded by his employer after the expiration of the grace period. Republic therefore required evidence of insurability. Mistric then made misrepresentations on the insurability questionnaire regarding a history of heart trouble. He died following a heart attack, and his wife submitted a claim for death benefits. The claim was denied on the basis of Mistric’s misrepresentations.
Republic had furnished to the employer forms for the employees to complete. Additionally, the employer was responsible for submitting those forms and for deducting premium payments from its employees’ wages. It failed to submit Mistric’s timely request for coverage which forced him, in order to obtain coverage, to misrepresent his medical history. The employer’s failure to timely submit Mistric’s application for coverage under the new employee provisions was held to be an omission of duty and was imputed to Republic on the basis of the employer’s having been an “administrator” of the policy, and thus an agent of Republic. 314 So.2d at 475. Recovery was allowed.
Buquet’s omission, i.e., failure to inform Rabun of his conversion privilege, resulted in Rabun’s failure to exercise that privilege. Rabun wanted to “continue” his coverage after he was terminated. This could have been accomplished by converting to individual coverage. Under the terms of Coastal’s policy, no evidence of insurability would have been required if the privilege was exercised within 31 days. By accepting Rabun’s payments, Buquet misled him into believing he was covered under the group policy, but the only valid means by which coverage could have been “continued” as Rabun had requested would have been conversion. We find that Buquet’s omission of duty to Rabun was similar to the omissions of duty in Neider and Mis-tric.
Neider and Mistric share a characteristic not present in the facts at bar. The administrative functions performed by the employer in each of these cited cases included the deducting of employee contributions from wages.[7] We note that it is not clear whether Rabun did contribute to premiums. Nevertheless, Rabun began paying the entirety of his premium upon termination. That premium should have been applied to a converted individual policy but was not. The record shows that Buquet performed the administrative functions in receiving the insurance documentation for its employees, in assisting them in completing the documentation and then forwarding it, and in distributing their certificates of insurance.[8]
Buquet placed itself in a position to perform all that was necessary to assure proper coverage for Rabun. He relied on Bu-quet to continue his coverage, and he paid the necessary premiums. While we have articulated different reasons, we agree that the trial court was not in error in deciding this case adverse to Coastal on the main demand. As to the third party demand, while Buquet’s actions may have been negligent in its capacity as an agent of Coastal, there is no evidence in the record that it sustained any damages as a result of Bu- *485 quet’s acts. Coastal would have been obligated to cover the risk. Whether the premiums would have differed is speculative. Accordingly we affirm at Coastal’s costs.
AFFIRMED.

. Coastal's policy provided, in pertinent part:
An Insured Person, within 31 days after the date his major medical expense insurance under this Part is terminated because of termination of employment shall be entitled to have issued to him, without evidence of insurability, an individual certificate of major medical insurance provided written application therefore (sic) and payment of the first premium thereon is received by the Company at its Home Office within 31 days. Any such individual certificate issued shall cover (1) the Employee if the major medical insurance under this Policy covers the Employee only, or (2) the Employee and his Insured Dependent(s), if the major medical expense insurance under this Policy covered the Employee and his Insured Dependents, and shall become effective on the day immediately following the date of termination of such insurance under the Policy. The form of the individual certificate, the coverage thereunder and all other terms and conditions thereof shall be such as is then provided by the Insurance Company with respects (sic) to insurance issued pursuant to an Application made in accordance with these provisions.
(Emphasis ours.) Both Rabun and Sorbert testified that each possessed a copy of the Coastal certificate of insurance which contained this provision.

. The premiums were higher and the coverage less.

. Coastal sought indemnity and/or contribution from Buquet in its third party demand.

. Both Coastal’s and Mutual’s policies provided for the termination of coverage upon the termination of full-time employment with Buquet.

. LSA-R.S. 22:213(B)(7), prior to its amendment by La.Acts, 1985, No. 249, § 1, provided:
The insurer may cancel this policy at anytime by written notice delivered to the insured, or mailed to his last address as shown on the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto. The insured may likewise cancel this policy on the above terms.
(Emphasis ours.)

.LSA-R.S. 22:221 provides, in pertinent part:
The provisions of R.S. 22:212 through 22:214 shall not apply to group or blanket health and accident insurance policies[.]
A hospital and medical care policy is a “health" insurance policy within the meaning of LSA-R.S. 22:221. Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767 (La.1980).

. In Neider, the employer paid the premiums but the master policy "contemplated" that the employer could require employee contributions. Neider v. Continental Assurance Company, 213 La. 621, 35 So.2d 237, 238 (1948).

. LSA-R.S. 22:215(A)(3)(g) requires that a certificate of insurance disclosing the benefits, limitations, exclusions, and reductions contained in the policy and other information pertinent to the covered employees be issued.