EDITH V. WING, administratrix, *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

Bristol. May 12, 1943. — June 29, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Agency*, What constitutes. *Insurance*, Group insurance.

Evidence of conduct of an employer with respect to group disability insurance, including the taking out of the master policy, deductions from the wages of the employee, and adjustment and payment of premiums on the master policy, would not have warranted a finding that the employer acted as an agent for the insurer in receiving from an employee a notice of his disability which by a certificate of the insurance issued to the employee was required to be given to the insurer.

CONTRACT. Writ in the Superior Court dated April 28, 1941.

The case was tried before *Warner*, J., who ordered a verdict for the defendant.

*W. B. Perry, Jr.*, for the plaintiff.

*M. R. Brownell*, for the defendant.

QUA, J. The plaintiff brings this action to recover disability payments alleged to have fallen due to her intestate, Frank R. Wing, in his lifetime, while he was insured by the defendant under a group insurance policy issued by the defendant to Wing's employer, Associated Gas and Electric Company, hereinafter called the employer.

There was evidence that Wing had "signed an applica-

tion with" the employer for employees' insurance; that in the application he had authorized the employer to deduct the premiums from his pay and "to consider and report the amount contributed toward the cost of such insurance as additional compensation" to him; that Wing did not then know in what company he was applying; that weekly thereafter a certain amount was taken by the employer out of Wing's wages as his contribution toward the premiums; that the employer contributed the balance of the premiums; that the defendant issued a master policy to the employer, for which it charged the employer a single premium annually; and that there were delivered to the employer individual certificates "made out to each" employee. Wing's certificate was delivered to him. The certificate was headed, "John Hancock Mutual Life Insurance Company of Boston, Mass." It stated that Wing was insured subject to the terms and conditions of the group policy issued to the employer, and it recited in detail the nature of the coverage and the rights of Wing under the certificate. In relation to disability payments it contained a proviso or condition that written notice of disability be "received by the Company" within a specified time. Except for receiving this certificate, Wing "had no business dealings with the defendant." The employer attended to all details in respect to the payment of premiums, the giving of monthly reports to the defendant concerning the number of insured employees, and the adjustment of premiums. While the policy was in force, Wing had a heart attack and was confined to bed, but continued to receive his wages. When he returned to work for a time (against his physician's orders) the employer asked him for a doctor's certificate. He furnished the employer such a certificate to the effect that he had coronary thrombosis and varicose ulcers. Aside from this doctor's certificate furnished to the employer there was no evidence of the written notice to the defendant of disability required by the condition in Wing's insurance certificate.

The trial judge directed a verdict for the defendant on the ground that there was no evidence that the employer was the agent of the defendant "in respect to the giving of

notice of or the sufficiency of the notice of a disability claim under the terms of the policy and the certificate of insurance." This ruling was right.

It is not difficult to analyze the situation here presented. The taking out of the master policy, the deductions from the wages of the employees, and the adjustment and payment of the premiums were all necessarily done by the employer, but there is nothing to show that in doing any of these things the employer acted as the agent of the defendant. If there was any agency at all, it would seem to have been one in behalf of the employees for whose benefit the master policy was taken out and the premiums upon it paid. There is nothing to show that the employer had anything whatever to do with notice, proofs, or payment of losses. Each employee had his own certificate, which took the place of the ordinary insurance policy, contained the terms of the contract with him, and informed him what he had to do in case of disability. He could bring his own action against the defendant, as his administratrix has now done, without the intervention of the employer. *Shea* v. *Aetna Life Ins. Co.* 292 Mass. 575, 580–582. *Trucken* v. *Metropolitan Life Ins. Co.* 303 Mass. 501, 504. In relation to losses he stood like any other policyholder and could deal directly with the company in accordance with his contract. See *Beecey* v. *Travelers Ins. Co.* 267 Mass. 135.

It follows from what has been said that the employer could not be found to have been the agent of the defendant to receive notice, and that the doctor's certificate furnished to the employer was not notice to the defendant within the terms of Wing's certificate of insurance. Similar results have been reached in other jurisdictions where similar questions have arisen. *Duval* v. *Metropolitan Life Ins. Co.* 82 N. H. 543, 548–551. *Boseman* v. *Connecticut General Life Ins. Co.* 301 U. S. 196, 204, and cases cited. *Metropolitan Life Ins. Co.* v. *Quilty,* 92 Fed. (2d) 829, 832.

We need not inquire whether, under the terms of the insurance certificate, a simple statement of a doctor as to the nature of an illness, given to his employer by an employee who had received his pay while out sick, would have been

a sufficient written notice of disability if the employer had been the agent of the defendant to receive such notice.

*Exceptions overruled.*