RICHARD BOUCHER ET AL. *v.* ROBERT J. VALUS ET AL.

CIRCUIT COURT                    SECOND CIRCUIT
                                 CV 2-697-69793

Memorandum filed September 11, 1972

*Wiggin & Dana,* of New Haven, for the plaintiffs.

*Willis & Willis,* of Bridgeport, for the defendants.

GOLDBERG, J.   In June, 1968, for some time prior thereto and thereafter, the plaintiff Richard Boucher was an employee of the defendant corporation. The plaintiff Evelyn Boucher is his wife.   During the course of his employment with the defendant corporation, the corporation provided certain group medical hospitalization insurance policies, namely, Blue Cross and Metropolitan major medical, for the benefit of its employees and their families, including the plaintiffs.   The corporation also provided its own insurance department for the benefit of its employees and their families.   This department, consisting of about six employees, handled and processed the group insurance claims of the corporation's employees and their families.   Beginning

about April, 1968, the defendant Valus was the supervisor of this insurance department, and one of his duties was to advise the employees of the corporation concerning coverage matters under the insurance policies and also to advise the employees concerning any questions that they might have pertaining thereto.

On June 29, 1968, the plaintiffs' minor son sustained severe personal injuries and was admitted to the Danbury Hospital. His hospital bills were paid under the Blue Cross policy during his stay at that hospital. On or about July 10, 1968, the plaintiffs were advised by the attending doctors that their minor son could be moved to a convalescent hospital, and the plaintiffs initiated preliminary arrangements for his removal to the Glen Hills Convalescent Center. On or about July 10, 1968, the plaintiff Evelyn Boucher called the defendant Valus to inquire whether the insurance policies would provide coverage for their son's confinement at the convalescent center. She explained to him that the plaintiffs would move him only if the insurance would pay the bills, as otherwise she would keep her son at the Danbury Hospital where the bills would be paid under the Blue Cross policy. Mrs. Boucher told Valus that she wanted an answer before moving her son to the convalescent center. Valus told her that he did not know but that he would check into the matter and he would have an answer in a few days. Mrs. Boucher called him back several days later, and he advised her that the insurance "would provide coverage" at the Glen Hills Convalescent Center so long as it was "an accredited hospital." Mrs. Boucher explained to him that it was accredited, a member of the joint hospital commission, and a licensed convalescent center. She suggested he verify this by checking with Glen Hills, and he replied that it was not necessary. Prior to

advising Mrs. Boucher as aforesaid, Valus admittedly did nothing by way of checking or investigating to determine the matter of coverage.

In complete reliance on Valus' statements as aforesaid, the plaintiffs moved their son to the Glen Hills Convalescent Center on July 19, 1968. Two weeks later the plaintiffs received a bill from the convalescent center and Mrs. Boucher called Valus, who then told her to call Blue Cross. She did, and an official there advised her that there was no Blue Cross coverage. When Mrs. Boucher spoke to Valus thereafter, he told her to send the bills directly to him, and he would check with the Metropolitan Insurance Company as to coverage. Although Valus admittedly knew that the plaintiffs wanted an answer as to coverage, it was not until August or September, 1968, that an employee under Valus checked with the Metropolitan Insurance Company. In October, 1968, the plaintiffs were advised by the defendants that there was no insurance coverage for their son's confinement at the Glen Hills Convalescent Center.

During the trial, it was conceded that in the event of a recovery by the plaintiffs, the amount to be awarded them would be $1187.48. The plaintiffs seek this amount in this action for their son's hospitalization at the Glen Hills Convalescent Center.

The complaint is in two counts. In the first count, the plaintiffs claim that they were induced to transfer their son to the convalescent center in reliance upon the representations of the defendant Valus as to insurance coverage; that his statements in this regard were false and misleading and were made recklessly without regard to their truth or falsity; and that the statements were made with intent and

knowledge that the plaintiffs would rely on them and suffer damage. Although the statements in question were false, incorrect and misleading, the facts found and summarized herein do not lead to the conclusion that they were made recklessly, without regard to whether they were true or false. The court therefore finds for the defendants on the first count.

In the second count, the plaintiffs seek recovery on the basis that the defendant Valus "individually and as agent for Avco [the corporation] was negligent in that he misinformed the plaintiffs as to the coverage afforded by said medical insurance policies when he knew or should have known that plaintiffs would be harmed by his failure to exercise proper care in advising plaintiffs of the coverage afforded by said medical insurance policies and when he knew or should have known that plaintiffs were relying upon him as the official source of information covering such coverage." The issue on this second count is whether a party may be liable for a negligent misstatement and, specifically, whether these defendants are to be held liable for statements by the defendant Valus as to insurance coverage, made negligently and with knowledge that the plaintiffs would act in reliance on the statements, to their detriment and damage.

The defendant corporation had provided an insurance department and its supervisor, the defendant Valus, for the benefit of its employees and their families. One of the duties of the defendant Valus was to advise employees and their families as to insurance coverage. Mrs. Boucher had made a specific inquiry with respect to the insurance coverage of her minor son at the convalescent center. She was entitled to have Valus or the insurance department make a proper investigation or check as to whether

there was insurance coverage. She was entitled to a clear and correct answer as to the insurance coverage.

Prior to advising Mrs. Boucher as he did, Valus made no check or proper investigation as to the matter in question. The statements made by Valus were incorrect and misleading and were made negligently without any prior proper determination. The truth as to the insurance coverage was not properly communicated to the plaintiffs. Valus knew or should have known that the plaintiffs would act in reliance upon the statements. In fact, the plaintiffs' actions in transferring their son to the convalescent center were induced by Valus' statements, and the plaintiffs suffered thereby.

"An innocent misrepresentation may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 346. In many jurisdictions, courts have held that misstatements negligently made are actionable. See *Gediman* v. *Anheuser Busch, Inc.,* 299 F.2d 537; Wright & FitzGerald, Connecticut Law of Torts (2d Ed.) § 141; 37 Am. Jur. 2d, Fraud and Deceit, § 209, and cases cited; Restatement, 3 Torts § 552.

The Restatement of Torts states the rule as follows: "Topic 3. Negligent Misrepresentations. § 552. Information Negligently Supplied for the Guidance of Others. One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and (b) the harm is suffered (i) by the person or one of the class of persons for

whose guidance the information was supplied, and (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith."

In the instant case, it was the defendants' business to supply information for the guidance of its employees with respect to the application and scope of coverage of its insurance policies. The matter was one which certainly required a checking or an investigation by the defendants, and they, the suppliers of the information, were therefore under a duty to exercise reasonable care and competence to ascertain the facts on which the statements were based. Further, the defendants were under a duty to exercise reasonable care and competence in communicating the information so that it would be understood by the plaintiffs. In giving the plaintiffs advice concerning this matter, the defendants obviously failed to exercise that care and competence, in obtaining and communicating the information, which the plaintiffs were justified in expecting. The plaintiffs justifiably relied on the statements made, were induced by them to act as they did in transferring their son to the convalescent center, and suffered damage in a transaction for which the information was sought.

In *Gediman* v. *Anheuser Busch, Inc.*, 299 F.2d 537, the plaintiff's decedent, an employee of the defendant covered under a pension plan for the benefit of the employees, sought advice from the defendant's pension consultants. His inquiry concerned the consequences of his exercising a certain option to take a cash distribution at a certain time. The pension consultants, in advising the employee, failed to warn him that his election or exercise of the option would reduce his death benefit enormously in the event he

deceased prior to a certain date. The court held that his estate representative could recover in tort from the defendant employer, citing (p. 543) the Restatement of Torts § 552. The court stated (pp. 545, 546) that the pension consultants did not " 'exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting.' . . . Having undertaken to advise, defendant was bound to advise clearly."

Thus in the instant case, the defendant corporation's agent, Valus, failed to exercise care and competence to obtain and communicate to the plaintiffs with clarity a correct and clear answer to their inquiry.

The plaintiffs have established and proved by a fair preponderance of the evidence the allegations of negligence set out in the second count of their complaint. The court therefore finds the issues for the plaintiffs and against the defendants on the second count.

Accordingly, judgment may enter in favor of the plaintiffs to recover of the defendants the sum of $1187.48 on the second count and their costs.