153 N.J. Super. 545 (1977)
380 A.2d 715
JANIS E. HIRSCH AND CAROL E. HIRSCH BIDWELL, PLAINTIFFS-APPELLANTS,
v.
TRAVELERS INSURANCE COMPANY, A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY; EQUITABLE LIFE ASSURANCE SOCIETY OF THE U.S., A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY; UNITED STATES LIFE INSURANCE COMPANY, A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY; AND LEON L. LEVY AND STANLEY MILNER, AS EXECUTORS AND TRUSTEES OF THE ESTATE OF JOHN M. HIRSCH, DECEASED, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1977.
Decided November 14, 1977.
*547 Before Judges HALPERN, LARNER and KING.
*548 Mr. Samuel Leventhal argued the cause for appellants.
Mr. Charles A. Delehey argued the cause for respondent Travelers Insurance Company (Messrs. Lenox, Giordano, Devlin, Delehey & Socey, attorneys).
Mr. Charles W. Hutchinson argued the cause for respondent Equitable Life Assurance Society of the U.S. (Messrs. Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys; Mr. Antonio D. Favetta on the brief).
Mr. Bertram M. Light, Jr. argued the cause for respondent United States Life Insurance Company.
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiffs Janis E. Hirsch and Carol E. Hirsch Bidwell are the daughters of the late John M. Hirsch who died on January 15, 1973. They instituted suit in the Superior Court against Travelers Insurance Company (Travelers), Equitable Life Assurance Society of the United States (Equitable) and United States Life Insurance Company (U.S. Life) to recover death benefits on life insurance policies issued by those companies on the life of their father. In addition, they joined the executors of the estate of John M. Hirsch on the alternative theory that their father breached a provision of a property settlement agreement between decedent and their mother in connection with a divorce in 1967, whereby decedent undertook to name the two children as irrevocable beneficiaries of the policies of insurance.
The central issue before the trial court was whether there was a proper change of beneficiary effectuated by the assured so as to bind the insurance companies to pay the proceeds to plaintiffs. Alternatively, if the assured failed to accomplish the change of beneficiary pursuant to the property settlement agreement, the court was required to determine whether his estate was liable in contract for such failure.
*549 After a nonjury trial the judge entered judgments in favor of all the insurance companies and a judgment in favor of plaintiffs against the estate in the sum of $18,058.36, representing the amounts which would have been due on the Equitable and U.S. Life policies. Plaintiffs appeal from the adverse judgments entered on the several claims. The executors of the estate did not cross-appeal and did not file a brief in response to plaintiffs' appeal.
Preliminarily, it should be noted that under the facts herein the claims against the respective insurance companies must be determined by the contractual relationship between decedent and the companies and the communications between them. The liability of the insurance companies herein does not depend upon or flow from the obligations of the assured under the property settlement agreement with his wife. In a direct action against the companies, as this is, plaintiffs' claim must rest upon the responsibility of the insurers under the terms of their policies. If payments have been made in accordance therewith, the companies are absolved from further liability despite the private undertaking of decedent. N.J.S.A. 17B:24-5. See also 2A Appleman, Insurance Law and Practice, § 1163 at 306-308 (1966).
Thus, regardless of decedent's contractual duty to designate his daughters as irrevocable beneficiaries on the policies, that duty cannot serve to establish a right to recover from the companies unless the assured did properly bring about such change within the terms of the policies themselves.

Travelers Policy
The Travelers policy, written in 1965, is a group life insurance policy issued to Lafayette Drafting Service, Inc. (Lafayette) as employer, covering decedent, an employee and officer of the company, in the amount of $30,000. In 1968 this policy was renewed and benefits were increased to $40,000.
*550 On March 14, 1967 decedent forwarded a letter to Travelers pursuant to his property settlement agreement in which he requested the following:
Please make the following irrevocable change of beneficiary on the above named insurance policy:
Payable upon the death of the assured, the beneficiaries shall be Carol E. Hirsch and Janis E. Hirsch, in equal shares, share and share alike.
The above clause shall be irrevocable and shall not be changed except with the consent of both the assured and the beneficiaries.
On April 6, 1967 Travelers responded by advising him that "all individual records are maintained and changes of beneficiary executed at the offices of Lafayette Drafting Service, Inc." and "we are referring your request to them for attention." On the same date Travelers wrote to Lafayette enclosing the correspondence with decedent and submitting an irrevocable change of beneficiary form. The letter instructed Lafayette as to the mode of execution of the form and advised that "It will be necessary that you note Mr. Hirsch's record card that this is an Irrevocable Change of Beneficiary."
Accordingly, on April 7, 1967 decedent executed the change of beneficiary form which unequivocally designated the two plaintiffs as beneficiaries in equal shares and also provided that the right of the employee to further change the beneficiary is revoked unless it be with the written consent of the newly named beneficiaries. This change of beneficiary form was retained by the employer as the designated record-keeper under the procedure outlined in the master policy. It also appears that this change of beneficiary was noted on the back of the record card maintained for the decedent, without a notation of irrevocability.
The evidence reveals that sometime subsequent thereto, and before the death of the insured, a Lafayette clerk assigned to the task of keeping the insurance records up to date erroneously placed the card in a file covering terminated employees, and for some unexplained reason replaced the card *551 in the active file by an identical card without notification of a change of beneficiary. At the time of the insured's death the designation of the insured's first wife, Shirley, as beneficiary, on the front of the card in the active file had been manually crossed out and there was written the name and address of his second wife, Doris F. Hirsch. This was done by Pauline Denko, the clerk in charge of insurance records, as a result of a chance remark by the insured during his lifetime that he had a new wife.
On January 22, 1973 Lafayette, through its president, filed a claim statement with Travelers naming Doris F. Hirsch as beneficiary and requesting payment to her in the face amount of the coverage of $40,000. In response, Travelers issued and forwarded a check in that amount payable to Doris F. Hirsch.
It is uncontradicted that the payment made to Doris F. Hirsch was the result of an error, for the policy was never modified to name her as beneficiary. It is equally apparent that the error probably resulted from careless record-keeping by employees of Lafayette and the reliance upon the card which was in the active file.
In fact, the testimony of Pauline Denko, who was in charge of insurance records, reveals that after payment of the claim to Doris Hirsch she found the other card in the terminated employee file which reflected the change in beneficiary in favor of plaintiffs, dated April 7, 1967. It was at that belated time that she amended the active file card by placing the names of plaintiffs as changed beneficiaries on the back thereof. Furthermore, after her deposition was taken she discovered among company papers in the basement the key documents in this litigation, consisting of the correspondence from Travelers and the executed change of beneficiary form naming plaintiffs as irrevocable beneficiaries.
The assessment of plaintiffs' claim against Travelers is controlled by the status of Lafayette vis-a-vis Travelers, as gleaned from the master group policy and the procedures created by Travelers for an employee-assured to change a *552 beneficiary. The master policy is revealing on this score. It provides:
Any Employee insured hereunder may designate a new beneficiary at any time by filing with the Employer a written request for such change on forms satisfactory to the Company, but such change shall become effective only upon receipt of such request at the office of the Employer where the records of the Employee's insurance under this policy are maintained.
Applying this policy provision as the standard of conduct required of an employee-insured to perfect a change in beneficiary, it is clear from the undisputed facts in the record that decedent fully complied therewith. After requesting the irrevocable change of beneficiary in a letter to Travelers he meticulously followed Travelers' instructions by executing the form prepared by Travelers and lodging it with his employer with whom all insurance records were maintained. The receipt of the request by Lafayette on the form satisfactory to Travelers triggered the contractual effectiveness of the beneficiary change as of April 7, 1967 and established a vested right in plaintiffs as irrevocable beneficiaries of the policy to receive the proceeds upon death of the insured if they survived him.
The subsequent blunders in record-keeping by employees of Lafayette cannot be attributed to the assured or the beneficiaries. The rights of plaintiffs became fixed as of the time that the assured complied with the policy requirements for a change in beneficiary. Any subsequent acts of the employer purporting to further change the beneficiaries without their consent cannot serve to destroy their irrevocable right to the proceeds of the policy. 2 Appleman, op. cit., §§ 911-913.
In the area of record-keeping, and particularly with respect to a change of beneficiary, the insurance company in its master policy designated Lafayette as its agent. See Lundeen v. Cordner, 354 F.2d 401 (8 Cir.1966); Elfstrom v. N.Y. Life Ins. Co., 67 Cal.2d 503, 63 Cal. Rptr. 35, 432 P.2d 731 (Sup. Ct. 1967). As long as Travelers delegated *553 its administrative and record-keeping functions connected with this group policy to Lafayette, that employer became its agent for those purposes. And the errors of the employer and its personnel are therefore attributable to Travelers in the context of the issue herein, and not to the assured or the properly designated beneficiaries.
In Elfstrom v. N.Y. Life Ins. Co., supra, Justice Mosk described the nature of the relationship between the insurer and employer in connection with group policies:
We are convinced that the employer is the agent of the insurer in performing the duties of administering group insurance policies. It cannot be said that the employer acts entirely for its own benefit or for the benefit of its employees in undertaking administrative functions. While a reduced premium may result if the employer relieves the insurer of these tasks, and this, of course, is advantageous to both the employer and the employees, the insurer also enjoys significant advantages from the arrangement. The reduction in the premium which results from employer-administration permits the insurer to realize a larger volume of sales, and at the same time the insurer's own administrative costs are markedly reduced. [63 Cal. Rptr. at 41, 432 P.2d at 737]
It is manifest, therefore, that not only is the liability of Travelers spelled out by its designation of Lafayette as agent for the function relevant to the issue herein, but also by the undeniable fact that the insured fully complied with the provisions for beneficiary change in the master policy and the instructions of Travelers' assistant supervisor of group policies. Thus Travelers can have no valid objection to the form of consummation of the change in beneficiary. There was nothing more that the assured could reasonably do to comply with the company's requirements. See Novern v. John Hancock Mut. Life Ins. Co., 107 N.J. Super. 570 (Law Div. 1969); Strohsahl v. Equitable Life Assur. Soc. of U.S., 71 N.J. Super. 300 (Ch. Div. 1962). And since neither the assured nor the beneficiaries participated in the record-keeping by Lafayette, plaintiffs cannot be deprived of the proceeds of the policy.
*554 The same rationale applies to the subsequent actions of Lafayette in submission of the claim on behalf of the assured's widow, Doris Hirsch. In this connection the interaction between Travelers and its amanuensis, Lafayette, cannot be attributed in any way to plaintiffs, as vested beneficiaries, in defeat of their claim. And, as a consequence, the mere fact of payment in error to one not entitled to the proceeds does not excuse Travelers from its obligation to pay the rightful beneficiaries. The unfortunate act of payment to Doris Hirsch in reliance upon the erroneous bookkeeping of Lafayette places Travelers in a position of liability to plaintiffs regardless of such payment. Plaintiffs are entitled to judgment against Travelers in the full amount of the policy coverage.

U.S. Life Policy
At the time of the property settlement agreement John M. Hirsch also had an individual life insurance policy with U.S. Life in the face amount of $12,000. This policy provided that a change of beneficiary may be effected in writing by filing a form satisfactory to the company.
On March 10, 1967 decedent forwarded a letter identical to that submitted to Travelers requesting an irrevocable change of beneficiary to his two daughters. This resulted in the submission of the company's change of beneficiary form which was executed and signed by the assured on April 19, 1967. This form requested the change of beneficiary in favor of Carol and Janis Hirsch, without any reference to irrevocability. In fact, it iterated the basic policy provision reserving unto the assured the right to change the designation of the beneficiary thereafter.
There is no controversy with regard to U.S. Life as to the right of plaintiffs to the proceeds of the policy. The issue rather is whether the actions of the assured during his lifetime reducing the net proceeds of the policy by way of a loan and amendment to a paid-up policy are controlling *555 upon the beneficiaries. The company has paid the appropriate net proceeds. Plaintiffs claim, however, that they are entitled to the initial gross coverage of the policy.
It is well-settled that a change of beneficiary can only be effected so as to bind the insurance company if it is accomplished in substantial compliance with the policy requirements. Strohsahl v. Equitable Life Assur. Soc. of U.S., supra. See also, New York Life Ins. Co. v. Hunt, 150 N.J. Super. 271, 274-275 (App. Div. 1977); Novern v. John Hancock Mut. Life Ins. Co., supra; Gerhard v. Travelers Ins. Co., 107 N.J. Super. 414, 421-422 (Ch. Div. 1969).
Since the insured filed a company form which did not designate plaintiffs as irrevocable beneficiaries, the preceding letter requesting such designation has no legal effect. The failure to include the irrevocable provision in the change of beneficiary form left the company free to accede to the applications of the assured for loans or paid-up policy privileges without requiring the consent of the beneficiaries. David v. Metropolitan Life Ins. Co., 135 N.J.L. 106 (Sup. Ct.), aff'd o.b. 136 N.J.L. 195 (E. & A. 1947).
In view of the foregoing, the determination in favor of U.S. Life accords with the policy contract and applicable law.

Equitable Life Policy
Decedent also had life insurance policies with Equitable in the sums of $4,000 and $7,000, which contained a provision that a change of beneficiary could only be effected by written notice to the company and appropriate endorsement on the policy. As in the case of the other companies, on March 14, 1967 the assured forwarded to Equitable a letter requesting an irrevocable change of beneficiary in favor of his two daughters.
The record is lacking in proof of mailing of this letter or receipt by Equitable, although such receipt may be inferred from the subsequent action taken by the company. On March *556 31, 1967 the company issued policy endorsements naming plaintiffs as the new beneficiaries, without a provision for irrevocability. Thereafter, during his lifetime the assured availed himself of the right to borrow on the policies and convert them under the paid-up provision so that there was a net fund due on both policies of $3,686 as of date of death. This sum was paid to plaintiffs and they seek the balance that would have been due on the original face value of the policies.
The legal precedents and authorities cited in discussion of the U.S. Life claim are equally applicable herein. An assured must comply with the policy provisions relating to change of beneficiary in order for such a change to be binding upon the company. The absence of a limitation of irrevocability in the endorsement permitted Equitable to accede to the insured's subsequent request for loans as well as the conversion to paid-up benefits without subjecting the company to a claim for the gross amount of the policies. And as has already been noted, this would follow regardless of the assured's private undertaking in the property settlement without the knowledge or participation by Equitable.
The content of the assured's letter alone is not sufficient to create an obligation on the part of Equitable under the facts and circumstances gleaned from this record. It can be inferred that sometime prior to March 31, 1967 the insured delivered the policy to Equitable for endorsement of the beneficiary change and that the policy with the endorsement thereon was then returned to the insured. There can be no other reasonable explanation since the policy in its final endorsed form was found among decedent's papers.
Despite the receipt of this endorsement which omitted the requested irrevocability provision, nothing further was done by the assured to correct or modify the same until his death in 1973. In the absence of other evidence of culpability by Equitable or its agents, the rights of the parties are controlled by the form of the change of beneficiary endorsement *557 and not by the unilateral letter of the insured. Since the record is devoid of evidence of any action taken by the assured to modify the revocable effect of the beneficiary change in the policy endorsement, we are unable to determine whether his silent acceptance was or was not a waiver of his original instructions. In any event, in the state of this record the only unequivocal evidence of the operative beneficiary change is that of the formal endorsement on the policy which remained as the controlling commitment of the insurer from its effective date to the time of death of the insured.
As a consequence, judgment in favor of Equitable is proper.

Conclusions
We therefore affirm the judgments in favor of U.S. Life Insurance Co. and Equitable Life Assurance Society. We reverse the judgment entered in favor of Travelers and direct the entry of judgment in favor of each plaintiff against Travelers Insurance Company in the sum of $20,000 plus interest from November 30, 1973 (date of filing of complaint).
When the trial judge decided to enter judgment in favor of Travelers, he logically proceeded to dismiss Travelers' cross-claim against Doris F. Hirsch for restitution and its third-party complaint against Lafayette for its negligence. In view of our reversal in the action against Travelers, it is just and proper that Travelers' cross-claim against Doris F. Hirsch and its third-party complaint against Lafayette be reinstated. We therefore remand the matter for determination of the liability of Doris F. Hirsch and/or Lafayette Drafting Service, Inc. by appropriate findings of fact and law on the basis of the existing record and hearing afforded to counsel for the interested parties. This determination may be made by the trial judge or such other judge who may be designated by the assignment judge.
*558 Because of our finding that decedent substantially complied with the change of beneficiary requirements of the Travelers policy, thus fulfilling his contractual obligation in this regard under the property settlement, plaintiffs are not entitled to the judgment against the estate arising out of the Travelers' claim. Therefore judgment against the estate based only on the potential claims arising out of the U.S. Life and Equitable policies is appropriate and is affirmed.
We do not retain jurisdiction.