OSCAR KIRKPATRICK vs. BOSTON MUTUAL LIFE INSURANCE
COMPANY & another.[1]

Norfolk.    September 13, 1984. — January 14, 1985.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Agency,* What constitutes. *Insurance,* Group insurance, Construction of
policy. *Contract,* Insurance.

In an action on an employee group insurance policy, the judge ruling on a
    motion for summary judgment erred in concluding that as matter of law
    the employer was not acting as the insurer's agent when it issued a
    certificate of insurance with an erroneous eligibility date to an employee,
    and that, consequently, the insurer was not bound by the error. [644-646]
    O'CONNOR, J., dissenting.
Language in a certificate of insurance issued to an employee under a group
    insurance policy, stating that the certificate was issued "subject to the
    terms of the Group Policy," did not as matter of law require that a
    conflict between the policy and the certificate respecting the employee's
    effective date be resolved by deferring to the terms of the policy. [646-
    649] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on February 8, 1983.

The case was heard by *Paul G. Garrity,* J., on a motion for
summary judgment.

The Supreme Judicial Court granted a request for direct
review.

*Richard L. Neumeier* (*Cheri L. Crow* with him) for the
plaintiff.

*Charles J. Bowser, Jr.,* for Boston Mutual Life Insurance
Company.

HENNESSEY, C.J. The plaintiff, Oscar Kirkpatrick, was party
to a group insurance contract with the defendant, Boston Mutual
Life Insurance Company (Boston Mutual), through his employ-
ment with Systems Engineering And Manufacturing Corp.
(Systems Corp.). He brought this action in the Superior Court

---

[1] Systems Engineering And Manufacturing Corp. was joined as a third-
party defendant.

alleging, in "Count One," that Boston Mutual violated the contract by refusing to pay him long-term disability benefits and alleging, in "Count Two," that such violations constituted an unfair and deceptive act under G. L. c. 93A. The plaintiff filed a motion for partial summary judgment on his contract claim, together with supporting affidavits. Boston Mutual opposed the motion and submitted its own affidavits. Based upon this record, a judge of the Superior Court denied the plaintiff's motion and granted summary judgment to Boston Mutual on both counts of the complaint. Subsequently the plaintiff filed an application for direct appellate review which we allowed. We now reverse the entry of summary judgment and remand the case for trial.

We summarize the facts as presented in the judge's findings and affidavits and exhibits of both parties. In June, 1978, Boston Mutual issued a group insurance policy to Systems Corp., the plaintiff's employer. The group policy provided for payment of long-term disability benefits, as well as for life, accidental death and dismemberment, and accident and sickness insurance to eligible employees. In 1979, the group policy was amended to provide that the effective date of coverage for employees hired after June 25, 1978, with respect to long-term disability and accident and sickness benefits, was "the 1st day of the insurance month following one year of employment." The policy's long-term disability coverage was subject to a 180 day elimination period as well as a "pre-existing condition" exclusion.[2] Excluded from the policy's long-term disability coverage was "any disability commencing during the first twelve months that the insurance is in force with respect to the Employee if the disability is caused or contributed to by, or is a consequence of, a disease or injury for which the Employee received medical treatment, or services, or took prescribed drugs or medicines during the three month period immediately prior to the Effective Date of such insurance."

As self-administrator of the group policy, Systems Corp. assumed such functions as enrolling members, providing claims

---

[2] Neither of these provisions applied to accident and sickness coverage.

information, providing premium reports, and filling out and distributing to eligible employees insurance certificates supplied by Boston Mutual. Systems Corp. also submitted a monthly group transaction report to Boston Mutual informing the insurer of additions to, deletions from, and changes in the coverage of eligible employees.

The plaintiff began his employment with Systems Corp. on August 11, 1980. He was hospitalized for hepatitis from July 8 to July 24, 1981, and then from July 31 to August 8, 1981. He returned to work on a full-time basis on October 5, 1981, and was terminated due to his continued disability from hepatitis on October 13, 1981.

The plaintiff testified in his deposition that he received a group insurance certificate through his employer sometime between July 8 and July 31, 1981. The certificate, issued by Boston Mutual, showed the benefits to which he was entitled under the group policy. At the top of the first page of this certificate, Systems Corp. filled in an erroneous effective date of June 25, 1981, for the plaintiff's long-term disability and accident and sickness coverage. The subsequent provisions of the certificate contained no further references to the effective date of coverage. However, according to the terms of the group policy, which the plaintiff never received, his effective date was September 1, 1981.[3] The significance of this conflict of dates is the applicability of the policy's pre-existing condition exclusion. If the plaintiff's effective date was June 25, 1981, he was entitled to benefits for his July disability; if his coverage was not effective until September 1, 1981, his disability falls within his three-month exclusion.

Systems Corp. paid premiums to Boston Mutual on the plaintiff's behalf for a period beginning June 25, 1981, and added the plaintiff's name to its monthly transaction report as eligible for benefits as of that date. On July 31, 1981, the plaintiff filed a claim with Boston Mutual for accident and sickness

---

[3] Since the plaintiff was not actively at work on September 1, 1981, his effective date, according to the policy, was postponed until his return to full-time employment in October, 1981.

benefits. On his claim form Systems Corp. again supplied the erroneous June 25 effective date. Based upon this date Boston Mutual paid the plaintiff accident and sickness benefits for the twenty-six week period between August 8, 1981, and January 7, 1982.

On March 1, 1982, the plaintiff applied to Boston Mutual for long-term disability benefits. On June 4, 1982, Boston Mutual denied his claim, alleging that the plaintiff's disability arose within three months of his September 1, 1981, effective date and therefore was excluded from coverage. The plaintiff contends he was due benefits based upon an effective date of June 25, 1981.

On appeal the plaintiff argues: (1) That Systems Corp. acted as an agent of Boston Mutual in filling out his certificate and therefore Boston Mutual is bound by the erroneous effective date appearing on his certificate, and (2) where there is a conflict in the terms of an individual certificate and group policy, that conflict should be resolved in favor of the insured. We are presented with issues of first impression[4] over which courts elsewhere are divided.

On a motion for summary judgment "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Hub Assocs.* v. *Goode,* 357 Mass. 449, 451 (1970), quoting *United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962). The motion judge should enter summary judgment only if the pleadings and affidavits of the parties demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). We will uphold an order for

---

[4] We are, however, guided by certain long-standing principles of insurance law. This court was one of the earliest to recognize that a contract of insurance is formed between the individual employee and insurer under a group insurance policy. *Shea* v. *Aetna Life Ins. Co.,* 292 Mass. 575, 580-581 (1935). While we have not decided what constitutes this contract, we have looked to an employee's insurance certificate "which took the place of the ordinary insurance policy" to determine contract terms. *Wing* v. *John Hancock Mut. Life Ins. Co.,* 314 Mass. 269, 271 (1943).

summary judgment on review only if "certain factors converge to convince us that the trial judge was ruling in this case on undisputed facts and, of course, that his ruling was correct as matter of law." *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 556 (1976).

Here, the underlying facts are virtually undisputed. The issue instead is what inferences can be drawn from these facts and whether in light of such inferences a jury "could find with reason what is required for liability in cases of this type." *Richey* v. *American Auto. Ass'n,* 380 Mass. 835, 838 (1980).

Applying these principles, we conclude that the motion judge erred in granting summary judgment to Boston Mutual. The judge ruled that Systems Corp. was not acting as Boston Mutual's agent in filling out the plaintiff's certificate; that Boston Mutual therefore could not be held responsible for System Corp.'s error; and that the terms of the plaintiff's group policy regarding his effective date must prevail over the conflicting provision in his certificate. We conclude that the crucial issue of agency presents a triable question for the jury, and if the jury were to find such agency, the applicable law is such that a verdict for the plaintiff would be warranted on count one, sounding in contract.[5]

1. *Agency.*

A conflict of authority exists over whether an employer acts as agent for the insured or the insurer in administering group policies. 1 J.A. Appleman, Insurance Law and Practice § 43 (rev. ed. 1981). In arguing that Systems Corp.

---

[5] The judge also ruled that the plaintiff had not relied upon the erroneous effective date in the certificate, and the parties also discuss that concept in their arguments. Presumably they are concerned with certain cases where certificates or employee literature indicated coverage different than the master policy, and the courts of several States have decided in favor of the plaintiffs based on equitable principles of reliance and estoppel. See, e.g., *Krauss* v. *Manhattan Life Ins. Co.,* 700 F.2d 870 (2d Cir. 1983); *Lewis* v. *Continental Life & Accident Co.,* 93 Idaho 348 (1969); *Riske* v. *National Casualty Co.,* 268 Wis. 199 (1954). We need not consider whether such reasoning would support a recovery for the plaintiff under Massachusetts law, because the proof offered here falls far short of showing that the plaintiff relied to his detriment upon the representations of the certificate as to effective date of coverage.

acted solely on behalf of its employees, Boston Mutual relies upon cases following the older "conventional" rule. *Id.* at 89 n.2, and cases cited. These authorities reason that an employer serves its own interests and those of its employees — rather than the adverse interests of the insurer — when it assumes administrative responsibilities. See *Norby* v. *Bankers Life Co.,* 304 Minn. 464, 468-470 (1975) (discussing and rejecting characterization of employer as agent of the insured). With the tremendous expansion of the group insurance market, a growing minority of courts have come to realize that the insurer is equally benefited by employer-administered plans. "It cannot be said that the employer acts entirely for its own benefit or for the benefit of its employees in undertaking administrative functions. While a reduced premium may result if the employer relieves the insurer of these tasks, and this, of course, is advantageous to both the employer and the employees, the insurer also enjoys significant advantages from the arrangement. The reduction in the premium which results from employer-administration permits the insurer to realize a larger volume of sales, and at the same time the insurer's own administrative costs are markedly reduced." *Elfstrom* v. *New York Life Ins. Co.,* 67 Cal. 2d 503, 512-513 (1967).

An agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." Restatement (Second) of Agency § 1 (1958).

Inferring the existence of an agency, a number of courts have held insurers responsible for administrative errors committed by employers (or other group policyholders) who act on their behalf. See, e.g., *John Hancock Mut. Life Ins. Co.* v. *Dorman,* 108 F.2d 220, 222-223 (9th Cir. 1939); *Clauson* v. *Prudential Ins. Co.,* 195 F. Supp. 72, 80 (D. Mass.), aff'd on other grounds, 296 F.2d 76, 79 (1st Cir. 1961) (applying Delaware law); *Blue Cross-Blue Shield* v. *Thornton,* 56 Ala. App. 678, 684 (1975); *Metropolitan Life Ins. Co.* v. *State Bd. of Equalization,* 32 Cal. 3d 649, 659 (1982); *Elfstrom, supra* at 512-513; *Woodard* v. *Prudential Ins. Co.,* 350 So.2d 948, 952 (La. App. 1977); *Norby, supra* at 470; *Hirsch* v. *Travelers*

*Ins. Co.,* 153 N.J. Super. 545, 553 (1977); *Baum* v. *Massachusetts Mut. Life Ins. Co.,* 357 P.2d 960, 964 (Okla. 1960); *Paulson* v. *Western Life Ins. Co.,* 292 Or. 38, 48 (1981).

Whether or not the employer acts as the insurer's agent is a factual question to be resolved on a case by case basis.[6] Among the criteria to consider are (1) whether the task is expressly delegated to the employer by the insurer; (2) whether the employer's performance is subject to the insurer's supervision and control; (3) whether there is any evidence of collusion between employer and employee to defraud the insurer. *Norby, supra* at 472-473. *Paulson, supra* at 48-51. Some courts which have addressed the specific issue as to whether a group policyholder acts as an agent when filling out individual insurance certificates have held that an agency does exist for this purpose. See, e.g., *Dorman, supra* at 222-223; *Loubat* v. *Audubon Life Ins. Co.,* 170 So.2d 745, 748 (La. App. 1964).

In light of such decisions, we conclude that it is for the jury to decide whether Systems Corp. acted as Boston Mutual's agent in completing the plaintiff's insurance certificate. Systems Corp. acted as an intermediary in receiving these certificates from the insurer, filling in names, policy numbers, and effective dates, and distributing the certificates to eligible employees. The certificate was the only part of the insurance contract received by the employees. Systems Corp. also paid premiums to Boston Mutual, submitted claims forms, and transmitted monthly transaction reports all of which, in the plaintiff's case, carried the incorrect effective date of his coverage. We cannot agree with the motion judge that as a matter of law no agency relationship existed by which Boston Mutual could be charged with Systems Corp.'s error.

---

[6] In *Wing* v. *John Hancock Mut. Life Ins. Co.,* 314 Mass. 269, 271 (1943), this court found that an employer was not acting as an agent of the insurer-defendant with regard to receiving notice of an employee's disability. The employee's certificate stated that such notice was to be received by the insurer. *Wing* did not pose the question as to whether the employer acted as an agent with regard to preparing and distributing the employees' certificates.

2. *Conflict Between Certificate and Policy.*

Boston Mutual argues that, since it is not bound by the clerical error committed by Systems Corp., the terms of the group policy regarding the plaintiff's effective date are controlling. The judge agreed, reasoning that the language of the certificate eliminated any ambiguity regarding the plaintiff's effective date. On its face, the certificate states that it "is issued in accordance with and subject to the terms of the Group Policy. This certificate will in no way void any of the terms and conditions outlined in the Policy but will show the benefits to which the Employee is entitled." In resolving the conflict between the documents by deferring to the policy's terms, the judge adopted the rule established in such cases as *Page* v. *Prudential Ins. Co.,* 231 Ala. 405, 407-408 (1936); *Standard of Am. Life Ins. Co.* v. *Humphreys,* 257 Ark. 618 (1975); *Morrison Assurance Co.* v. *Armstrong,* 152 Ga. App. 885 (1980); *Adair* v. *General Am. Life Ins. Co.,* 124 S.W.2d 657 (Mo. App. 1939); *Transport Life Ins. Co.* v. *Karr,* 491 S.W.2d 446 (Tex. Civ. App. 1973).[7] We are not persuaded by these authorities.[8]

The better view — and "the present weight of authority" — holds that where insurance certificates create ambiguities in the extent of coverage, and particularly where conflicts exist between the terms of the certificate and the group policy, the

---

[7] Several of these cases are factually distinguishable from the instant case. In *Adair* and *Page,* the certificates did not expressly contradict the policies but simply omitted the relevant terms. The *Page* court noted, *supra* at 408, that "[i]f [the certificate's] terms definitely contradict those of the master policy on a material point . . . the rule of liberal construction should be applied in favor of the certificate holder." In *Standard of Am. Life Ins. Co.,* *supra* at 621, the court emphasized the certificate's explicit reference to the challenged provision of the group policy. In this case the certificate made no reference to the policy's effective date provisions.

[8] In an influential case relied upon by the motion judge, the court readily admits that "Justice is not well served by this rule of law." *Morrison Assurance Co., supra* at 888. Constrained by judicial precedent, the court criticizes the older rule for placing the burden upon the employee to obtain the policy and discover any inconsistencies within its complex provisions thereby violating "the spirit of the trend toward consumer protection now recognized in all areas of the law." *Id.*

language of the certificate, where more favorable to the insured, prevails. Appleman, *supra* § 46, at 155-159. See, e.g., *Davis v. Crown Life Ins. Co.,* 696 F.2d 1343, 1345 (11th Cir. 1983) (applying Florida law); *Life Ins. Co.* v. *Lee,* 519 F.2d 475, 478 (6th Cir. 1975) (applying Tennessee law); *Lecker* v. *General Am. Life Ins. Co.,* 55 Hawaii 624, 632 (1974); *Davey* v. *Louisiana Health Serv. & Indem. Co.,* 357 So.2d 1170, 1174-1175 (La. App. 1978); *Potter* v. *Reliance Mut. Life Ins. Co.,* 21 Pa. D. & C. 2d 603, 607 (1960).

Only two reported cases concern a conflict between certificate and policy terms regarding the effective date of an employee's coverage. In both the courts resolved the conflict in favor of the insured and found the certificate's terms controlling. *Equitable Life Assurance Soc'y* v. *Wagoner,* 269 So.2d 747, 748 (Fla. Dist. Ct. App. 1972). *Exstrum* v. *Union Casualty & Life Ins. Co.,* 167 Neb. 150, 160 (1958) (applying Illinois law). It is noteworthy that this result was reached in the *Equitable Life Assurance Soc'y* case despite a clause in the certificate notifying the insured that the certificate "is furnished in accordance with and subject to the terms of the Group Policy." *Id.* at 748. See also *Lecker, supra* at 631 (insured entitled to rely on certificate despite proviso that benefits are subject to policy's terms). The result reached in this line of cases "can be easily justified upon the ground that the individual certificate is the only instrument which the employee sees at any time, and that if the insurer chooses to draft and to issue these certificates in language selected by it, then it cannot be heard to complain that such language does not express the intention of the parties." Appleman, *supra* § 46, at 158. This principle is equally applicable if the insurer acts through an agent in preparing and issuing the certificates.[9]

While this court has not had occasion to decide what terms shall apply in cases of conflict between the certificate and policy, it has long held that "ambiguities in insurance policies must be construed in favor of the insured." *Slater* v. *United States Fidelity & Guar. Co.,* 379 Mass. 801, 808 (1980). See

---

[9] See cases cited *supra* at 645-646.

also *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). In *Cody, supra* at 148-149, we noted that marketing group insurance policies through the workplace may result in misleading contracts which violate public policy. We also warned insurers of potential liability for misleading insurance literature prepared and distributed by employer-policyholders. *Id.* at 150 n.14.

Boston Mutual contends that in the context of group insurance, no contract arises between the employee and insurer until the effective date of the employee's coverage as determined by the group policy. According to this reasoning, the plaintiff could not properly accept the insurer's contract offer until September 1, 1981, and therefore no contract existed in June, 1981, the effective date appearing on the certificate. We do not find this argument persuasive. See *Shea* v. *Aetna Life Ins. Co.*, 292 Mass. 575, 580-581 (1935) (employee becomes party to insurance contract upon application and payment of premiums). See also *Krause* v. *Washington Nat'l Ins.*, 255 Or. 446, 456-457 (1970). Because we agree with the motion judge that the contract formed between the plaintiff and Boston Mutual consisted of both the certificate and policy, we also reject the insurer's contention that enforcing the June, 1981, effective date would create insurance coverage by estoppel. Courts which deny relief to the insured for this reason do not consider the certificate part of the insurance contract. Accordingly to bind an insurer to errors contained in the certificate would create coverage beyond the contract. See *Morris* v. *Travelers Ins. Co.*, 546 S.W.2d 477, 481-486 (Mo. App. 1976) (because insurance contract consists of certificate and policy, general rule as to creation of coverage by estoppel does not apply); *Equitable Life Assurance Soc'y, supra* at 748 (where contract consists of policy and certificate construed together, conflicts between the two are resolved to provide broadest coverage).

We conclude that a verdict for the plaintiff on the count in contract would be warranted, if evidence as shown in the affidavits and exhibits of the parties is produced at the trial. We therefore reverse the order entering summary judgment for

Boston Mutual and remand the case for further proceedings in accordance with this opinion.[10]

*So ordered.*

O'CONNOR, J. (dissenting). Central to the court's analysis of the issues raised by this appeal is its conclusion — erroneous in my opinion — that there is a contract between the plaintiff and Boston Mutual. In reaching that conclusion, the court joins the trend observable in other jurisdictions, "to consider [group] insurance as something radically different from other coverages and to engender new principles to apply thereto." 1 J.A. Appleman, Insurance Law and Practice § 41, at 85 (rev. ed. 1981).

We have held that a contract of insurance is interpreted according to the same rules that govern the interpretation of all contracts. *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.,* 131 Mass. 164, 165 (1881). Those rules apply equally to group insurance policies. 1 J.A. Appleman, *supra.* As it is with any contract, our objective in interpreting an insurance contract is to "effectuate[ ] the main manifested design of the parties." *Slater* v. *United States Fidelity & Guar. Co.,* 379 Mass. 801, 809 (1980). *Joseph E. Bennett Co.* v. *Fireman's Fund Ins. Co.,* 344 Mass. 99, 103-104 (1962). *Koshland* v. *Columbia Ins. Co.,* 237 Mass. 467, 471 (1921). "What the contracting parties intended, mutually agreed to, and their minds met upon, is the measure of their obligations." *Elsey* v. *Prudential Ins. Co.,* 262 F.2d 432, 434-435 (10th Cir. 1958), quoting *Mofrad* v. *New York Life Ins. Co.,* 206 F.2d 491, 493 (10th Cir. 1953).

In *Shea* v. *Aetna Life Ins. Co.,* 292 Mass. 575 (1935), we held that a plaintiff employee had become a party to the contract between his employer and the insurance company under a group

[10] We need not reach the plaintiff's G. L. c. 93A claim against Boston Mutual. The motion judge ordered summary judgment for Boston Mutual on this count based upon his decision regarding the plaintiff's contract claim. Accordingly, we reverse and remand on this claim as well.

insurance policy. We based that holding on an analysis of the facts of the case, the terms of the policy, and the terms of the plaintiff's application. *Id.* at 580. In *Shea,* the master policy held by the employer did not, in and of itself, provide coverage for any employee. Rather, the master policy contemplated that coverage would be offered to any eligible employee on the terms stated in the master policy. Employees could accept that offer by making an application and authorizing deductions from their wages. The employees provided consideration in the form of contributions toward the cost of the premiums. *Id.* at 581. Those facts clearly support the court's conclusion that a contract was formed between the employee and the insurance company.

Today, the court abandons the rationale underlying our decision in *Shea,* and holds that under *any* group insurance policy, regardless of the terms of the policy or the intentions of the parties, there is a contract between the insurance company and the employee. By finding such a contract in this case, the court ignores the most basic principles of contract law.

Under the terms of the master policy held by the plaintiff's employer, all employees of the plaintiff's class were covered under the policy as soon as they met the requirements for eligibility. The policy did not contemplate any offer to, or acceptance by, individual employees. Although the plaintiff did fill out an application for insurance, under the terms of the contract between Systems Corp. and Boston Mutual that application was not a requisite for coverage under the policy.[1] Any employee who met the eligibility requirements was covered, regardless of whether he or she had previously assented to coverage or was even aware that the policy existed. See *Bass* v. *John Hancock Mut. Life Ins. Co.,* 10 Cal. 3d 792, 797 n.3 (1974).

---

[1] The relevant portion of the policy states: "*Effective Dates of Insurance*: If this Policy provides insurance on a contributory basis, eligible employees may become insured only by making written application to the Company through the Policyholder on forms furnished by the Company. . . .

"If this Policy provides insurance on a non-contributory basis, the insurance of any employee shall become effective on his eligibility date."

Except in circumstances not relevant here,[2] "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1) (1981). Under no reasonable construction of the terms of the policy or the certificate can a contract between the plaintiff and Boston Mutual be found. The master policy does not call for or require a "manifestation of assent" to the exchange by the employees. The employees need not even be aware of the policy to be covered. The only "manifestation of assent" is between the employer and the insurance company.

Nor does the policy require that employees provide consideration for their coverage under the policy, since the premiums are paid entirely by Systems Corp. Some courts have reasoned that under a noncontributory plan, the employee gives consideration by forgoing other employment and by completing the eligibility waiting period. See, e.g., *Morris* v. *Travelers Ins. Co.,* 546 S.W.2d 477, 484 (Mo. App. 1976). However, such reasoning ignores the requirement that the consideration be "bargained for" — i.e., that it induce the making of the promise and that the promise induce the furnishing of the consideration. Restatement (Second) of Contracts, *supra* § 71 comment b. Where the employee has no knowledge of coverage or of the length of the waiting period for eligibility, it cannot be said that he or she forgoes other employment or completes the waiting period in exchange for the promise to insure. Other courts have found consideration in the employer's payment of premiums, noting that the economic effect is the same as if the employee had received the premium and paid the insurer directly. See, e.g., *Morris, supra* at 484. See also *Lecker* v. *General Am. Life Ins. Co.,* 55 Hawaii 624, 631 (1974). That reasoning ignores the fact that generally the employee has no right to obtain cash in lieu of the premium payment and therefore the premium payment is not given by the employee "in exchange" for coverage. It is not consideration to give up

---

[2] See Restatement (Second) of Contracts §§ 17, 82-94 (1981). As the court acknowledges, in this case there is no evidence that the plaintiff relied on the information supplied in the certificate.

something one does not have. Even if the employer is obligated to provide insurance coverage as part of the employees' compensation under the terms of the employment contract, that does not create a contract between the insurance company and the employee. In such a case, the employee works in exchange for the employer's promise to obtain insurance, not the insurer's promise to insure.

The terms of the master policy indicate an intent by Systems Corp. and Boston Mutual to enter a contract which was complete in and of itself. Although the policy called for Systems Corp. to deliver certificates to employees, that does not thereby make the employees parties to the contract. I am confident that the court would not hesitate to hold Boston Mutual liable to an employee who was eligible for coverage under the policy regardless of whether he or she had received a certificate from the employer. Such an employee's rights under the policy derive not from the certificate but from his or her status as a third-party beneficiary to the contract between Systems Corp. and Boston Mutual.

Because the plaintiff is only a third-party beneficiary to a contract between Systems Corp. and Boston Mutual, it follows that Systems Corp. could not bind Boston Mutual by erroneously describing the terms of that contract to the plaintiff. The contract called for Boston Mutual to supply certificates to Systems Corp. In filling out those certificates, Systems Corp. was not doing anything on behalf of Boston Mutual. It cannot rightly be said that Systems Corp. was authorized to unilaterally change the terms of its contract with Boston Mutual.

This analysis is consistent with the results, if not the language and the express rationale, of many of the cases cited by the court. If the master policy contemplates the formation of separate contracts with individual employees, and the insurer relies on the employer to solicit employees or to provide information on the terms of the coverage, under principles of agency law the insurer may, in some circumstances, be bound by the erroneous representations of the employer. See, e.g., *John Hancock Mut. Life Ins. Co.* v. *Dorman,* 108 F.2d 220 (9th Cir. 1939); *Clauson* v. *Prudential Ins. Co.,* 195 F. Supp. 72 (D.

Mass. 1961); *Blue Cross-Blue Shield* v. *Thornton,* 56 Ala. App. 678 (1975); *Elfstrom* v. *New York Life Ins. Co.,* 67 Cal. 2d 503 (1967); *Paulson* v. *Western Life Ins. Co.,* 292 Or. 38, 48 (1981). Cf. *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 149 n.14 (1982). Even when the master policy does not contemplate that employees will enter separate contracts with the insurance company, if the employee relies on representations of the employer, either the employer, the insurance company, or both, may be liable under equitable principles of estoppel. "[T]he crucial consideration in dealing with [a] claim of estoppel is not what [the employer] and [the insurance company] may have thought they were doing, but the impact of their inaction and action upon a reasonable man in [the employee's] position" (citation omitted). *Clauson* v. *Prudential Ins. Co.,* 195 F. Supp. 72, 79 (D. Mass. 1961). See, e.g., *Norby* v. *Bankers Life Co.,* 304 Minn. 464, 468-470 (1975); *Hirsch* v. *Travelers Ins. Co.,* 153 N.J. Super. 545, 553 (1977); *Baum* v. *Massachusetts Mut. Life Ins. Co.,* 357 P.2d 960, 964 (Okla. 1960); *Boucher* v. *Valus,* 298 A.2d 238 (Conn. Cir. Ct. 1972).

In a case such as this, however, where there is no contract between the plaintiff and the insurer, and no reliance on the erroneous information supplied by the employer, the terms of the master policy must determine the obligations of the parties. To the extent that the cases cited by the majority are to the contrary, I do not find their analysis persuasive and would decline to follow them.

Because the plaintiff was not eligible for long-term disability benefits under the terms of the policy, and because, as the court acknowledges, there is nothing to suggest that he relied on the erroneous information in the certificate, Boston Mutual was entitled to summary judgment on the contract claim. The Superior Court judge also granted summary judgment to Boston Mutual on the plaintiff's G. L. c. 93A claim. Rule 56 of Mass. R. Civ. P., 365 Mass. 824 (1974), authorizes a judge to grant summary judgment only upon a motion by a party. Because neither party had moved for summary judgment on the G. L. c. 93A claim, I would reverse the entry of summary judgment on that count and remand the case for further proceedings.